JUNTA DE RELACIONES DEL TRABAJO, peticionaria, *v.* NATHANIEL I. NAMEROW, haciendo negocios bajo el nombre de "LA CASA BLANCA", querellado.

Núm. 5.—*Sometido:* Junio 18, 1948. *Resuelto:* Julio 6, 1948.

*Hon. Procurador General Luis Negrón Fernández, A. Torres Braschi* y *Carlos J. Faure, Procuradores Generales Auxiliares* y *Yamil Galib Frangie,* abogados de la peticionaria; el querellado compareció por su propio derecho.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La presente es una solicitud de la Junta de Relaciones del Trabajo insular, radicada en virtud del artículo 9(2)(*a*) de la Ley núm. 130, Leyes de Puerto Rico, 1945 (pág. 407), según fué enmendada por la Ley núm. 6, Leyes de Puerto Rico, 1946 ((1) pág. 19), para que se ponga en vigor la orden de la Junta dirigida a un patrono ordenándole que conceda a algunos de sus empleados quince días de vacaciones con paga.

El patrono, Nathaniel I. Namerow, explota un tren de lavado en seco bajo el nombre de "La Casa Blanca". El 20 de marzo de 1945 celebró un convenio colectivo con sus empleados, representados por la Unión de Trabajadores de la Industria de *Laundries,* afiliada a la Federación Libre de Trabajadores de Puerto Rico. Ramón Arias firmó el convenio a nombre de Namerow, por estar éste para dicha época en las fuerzas armadas, acantonadas en el Pacífico del Sur. El convenio se hizo retroactivo al 1 de febrero de 1945, y expiró el 31 de diciembre de 1945.

El convenio contenía una escala de salarios que clasificaba a los empleados de conformidad con la naturaleza de

sus trabajos. El salario para los "Espoteadores" y "Operadores de Dry Cleaning" se fijó en "$13.50 más bono de $1.00 . . . 14.50 semanal" y "$15.25 más bono de $1.00 . . . $16.25 semanal", respectivamente.

Mientras regía el convenio, el operador de *dry cleaning* y el "espoteador" abandonaron sus empleos con Namerow. Pedro Reyes y Gabriel Pacheco, dos empleados que hacían otras tareas, fueron ascendidos a estos puestos. Se les pagó los salarios semanales establecidos en el convenio para sus nuevos puestos, con excepción del bono de $1.00. Tres semanas después de estar trabajando en sus nuevos puestos, Reyes y Pacheco demandaron el pago del bono por el fundamento de que éste era parte de su salario. La esposa de Namerow, quien durante su ausencia estaba a cargo del negocio, se negó a pagarles el bono hasta que a juicio suyo desarrollaran la habilidad necesaria para rendir un trabajo satisfactorio.

Luego de varias conferencias que es innecesario detallar, el 26 de julio de 1945 los empleados declararon una huelga con motivo de la controversia existente en cuanto al pago del bono a Reyes y a Pacheco. La Sra. Namerow declaró que mientras existía el estado de huelga, les dijo a los representantes de los empleados que ella no haría concesión alguna, pero que si regresaban al trabajo, ella determinaría en una semana o dos a discreción suya si los dos obreros se habían ganado el derecho al bono desarrollando la habilidad necesaria para realizar un buen trabajo. El 28 de julio de 1945 los empleados regresaron al trabajo. Cuatro semanas después, La Casa Blanca empezó a pagarle el bono a Reyes y a Pacheco.

El 17 de octubre de 1945 el Presidente y el Secretario de la Unión notificaron por carta a La Casa Blanca que de acuerdo con el convenio todo empleado tenía el derecho a quince días de vacaciones. La carta solicitaba que se concedieran las vacaciones al finalizar el año en la forma más

práctica y conveniente para la industria. El 21 de noviembre de 1945 Arias contestó a nombre de La Casa Blanca. La solicitud de vacaciones fué negada en dicha carta por el fundamento de que los empleados habían infringido el convenio declarando una huelga por tres días en vez de someter a arbitraje la cuestión del pago del bono a Reyes y a Pacheco, según se disponía en el convenio.

La unión presentó cargos contra Namerow ante la Junta por motivo de su negativa a conceder estas vacaciones. Un oficial examinador celebró las vistas y recomendó a la Junta una propuesta orden. Luego de modificar ésta en varios aspectos, la Junta ordenó a Namerow que concediera 15 días de vacaciones con paga a quince de sus empleados.[1] Namerow no cumplió con esta orden, y la Junta nos ha pedido que la pongamos en vigor.

Namerow alega que la huelga de julio 26 al 28 fué ilegal. Basa su contención en parte en una cláusula del convenio colectivo que disponía el nombramiento de un Comité de Quejas y Agravios que, junto al patrono, resolvería todas las dificultades provenientes de la interpretación del convenio. Esta cláusula disponía asimismo que si el Comité y el patrono no se ponían de acuerdo, el Comité y el patrono designarían un miembro imparcial cuya decisión sería final y compulsoria para las partes. Namerow afirma que sus empleados violaron el convenio declarando una huelga sin recurrir al arbitraje. Y esta infracción, de conformidad con Namerow, terminó el convenio. También arguye que la posición asumida por su esposa era correcta en cuanto a los méritos de la cuestión que precipitó la huelga; es decir, el derecho de Pacheco y de Reyes a un bono independientemente de su habilidad en el desempeño de sus nuevas labores.

Es innecesario determinar (a) si Reyes y Pacheco tenían derecho, sin requisito alguno, a un bono como parte de sus

---

[1] En cuanto a seis de los empleados, existe un disponiéndose en relación con el posible efecto de un convenio colectivo posterior que ninguna de las partes discute en detalle en los alegatos y en consecuencia no hacemos comentario alguno sobre el mismo.

salarios, independientemente de su habilidad, eficiencia o diligencia, o (b) si la huelga fué una infracción del convenio. Presumimos, sin decidirlo, que Namerow tiene razón en cuanto a estos dos puntos. También presumimos que·por causa de tal infracción Namerow tenía derecho a considerar terminado el convenio.

Sin embargo, para nosotros la médula del caso es que aún suponiendo que los empleados violaron el convenio declarando una huelga en vez de invocar el procedimiento de quejas y agravios, la Junta encontró probado que esta infracción había sido renunciada por el patrono y que por tanto el convenio permanecía en vigor al volver los empleados al trabajo el 28 de julio.

Namerow alega que el convenio era nulo y sin valor alguno por motivo de la infracción; que su esposa notificó verbalmente a los empleados que La Casa Blanca consideró terminado el convenio; y que ella permitió que los empleados regresaran al trabajo sin que existiera ningún convenio. La declaración de la Sra. Namerow apoya esta contención. Arias también declaró que a nombre de Namerow informó verbalmente al Presidente de la unión y a los empleados que La Casa Blanca consideraba nulo el contrato por razon de la huelga.

Por otro lado, el Vicepresidente y delegado de la unión declaró en el interrogatorio directo que nadie le dijo a él o a los empleados, al regresar éstos a trabajar, que el convenio ya no estaba en vigor. En el contrainterrogatorio manifestó que no recordaba si la señora Namerow le había dicho eso a él. Y el récord contiene evidencia al efecto de que durante el resto del año se pagaran los salarios más los bonos fijados en el convenio; las condiciones de trabajo eran las mismas; y la unión suministraba los empleados para cubrir vacantes, según disponía el convenio. Además, cuando el Presidente y el Secretario de la unión le escribieron a La Casa Blanca el 17 de octubre de 1945, solicitando las vacaciones

a tenor con el convenio, Arias no contestó hasta más de un mes después. Y su contestación sólo dice que la huelga fué una violación del convenio, y no que el patrono había optado, con motivo de la infracción, por considerar el contrato nulo desde el 28 de julio y así lo había notificado a sus empleados en dicha fecha. Además, el período cubierto por el convenio expiró sin que La Casa Blanca le notificara por escrito a sus empleados que el patrono había optado por considerar sin efecto el convenio debido a la violación del mismo.

Si la Junta hubiera aceptado la declaración de la Sra. Namerow y del Sr. Arias, al efecto de que ellos habían notificado verbalmente a los oficiales de la unión que La Casa Blanca consideraba nulo el contrato en virtud de la violación del mismo y que los empleados regresaban al trabajo sin convenio alguno, quizá la Junta no podía resolver, como cuestión de derecho, que la violación había sido renunciada. Pero aparentemente la Junta no dió crédito a este testimonio. Y la otra evidencia que existe en el récord no nos obliga a concluir que, como cuestión de hecho, La Casa Blanca optó por dar el convenio por terminado.

No se nos han conferido poderes ilimitados para revisar las conclusiones de hecho de la Junta. El artículo 9(2) (a) de la Ley dispone que "Las conclusiones de la Junta en cuanto a los hechos, si estuvieren respaldadas por la evidencia, serán concluyentes." Sólo en caso de que el récord no contenga evidencia en apoyo de las conclusiones de hecho a que llegue la Junta, estaríamos autorizados para resolver, como cuestión de derecho, que las conclusiones de hecho, y la orden en éstas basada, no pueden subsistir. Como hemos visto, la posición de La Casa Blanca sobre este punto descansa casi enteramente en el testimonio de la Sra. Namerow y del Sr. Arias. No hay base para que resolvamos que, como cuestión de derecho, la Junta venía obligada a darle crédito a este testimonio.

■ Aceptando, como debemos, la conclusión de hecho al efecto de que La Casa Blanca optó por considerar que el convenio seguía rigiendo a pesar de la infracción, la Junta resolvió correctamente como cuestión de derecho que bajo dichas circunstancias los términos del convenio en lo que se refieren a vacaciones continuaron obligando al patrono. Véanse *Hazel-Atlas Glass Co.* v. *National Labor Relations Bd.*, 127 F.2d 109, 118 (C.C.A. 4, 1942); *Stewart Die Casting Corp.* v. *National Labor R. Board*, 114 F.2d 849, 855–56 (C.C.A. 7, 1940); *National Labor Relations Board* v. *Aladdin Industries*, 125 F.2d 377, 382 (C.C.A. 7, 1942).

■ La única cuestión que queda por resolver es si los quince empleados comprendidos en la orden de la Junta tenían derecho a vacaciones. Una de las cláusulas del convenio disponía la concesión de quince días de vacaciones con paga para cada empleado que trabajare continuamente durante un año un día. El convenio estaría en vigor solamente por once meses—febrero 1 a 31 de diciembre de 1945. Convenimos con el patrono en que bajo esta cláusula las vacaciones se devengaron solamente en virtud de trabajo realizado empezando el 1 de febrero. Pero resolver que solamente los empleados que trabajaron por un año durante la vigencia de un convenio de once meses tenían derecho a vacaciones, sería convertir en ilusoria la cláusula sobre vacaciones. La resolución de la Junta cubre quince empleados que trabajaron un año un día después del primero de febrero de 1945. Esto, desde luego, les exigía trabajar después de la fecha de terminación del convenio para obtener sus vacaciones. Pero resolver, como cuestión de derecho, que esto no se podía hacer, privaría a la cláusula de vacaciones de todo efecto. No encontramos que la Junta cometiera error a este respecto.

*Se dictará sentencia poniendo en vigor la orden de la Junta de acuerdo con lo solicitado en la petición.*

El Juez Asociado Sr. De Jesús no intervino.