Concepción Rivera, peticionario, v. Junta de Relaciones del Trabajo de Puerto Rico, representada por su Presidente Federico Barela, demandada; Sindicato de Trabajadores de la Industria Azucarera de Hatillo, interventor.

Núm. 17.—*Sometido:* Mayo 2, 1949. *Resuelto:* Mayo 23, 1949.

6

*E. Martínez Avilés* e *Isaías M. Crespo,* abogados del peticionario; *Hon. Procurador General Vicente Géigel Polanco, A. Torres Braschi, Procurador General Auxiliar* e *Hiram R. Cancio Vilella,* abogado éste de la Junta de Relaciones del Trabajo, abogados todos de la Junta mencionada.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

La presente es una solicitud del patrono Concepción Rivera para que revisemos una Decisión y Orden emitida por la Junta Insular de Relaciones del Trabajo.

En 1947 Rivera era dueño de tres fincas en Hatillo de las cuales 74 cuerdas estaban dedicadas a la siembra de cañas de azúcar. Se le imputó en una querella expedida por la Junta haber incurrido en varias prácticas ilícitas del trabajo allá para marzo de 1947. Estas supuestas prácticas ilícitas incluían el haber despedido a ciertos empleados por dedicarse a actividades unionales y el negarse a negociar colectivamente con la filial local del Sindicato de Trabajadores de la Industria Azucarera en Hatillo, como el exclusivo representante de sus empleados que trabajan en la siembra, corte, recolección y transportación de la caña en sus tres fincas.

La Junta resolvió que los empleados de Rivera en la producción y transportación de cañas en sus tres fincas, constituían una unidad apropiada a los fines de la negociación colectiva a tenor con el artículo 5(2) de nuestra Ley de Rela-

ciones del Trabajo; que el Sindicato había sido designado por una mayoría de estos empleados para que efectuara la negociación colectiva de conformidad con el artículo 5(1); que Rivera había despedido a ciertos empleados por dedicarse a actividades del Sindicato; y que se había negado a negociar colectivamente con el Sindicato como el exclusivo representante de sus empleados, habiendo con ello cometido una práctica ilícita del trabajo en violación del artículo 8(1)(d) de la ley.(¹)

■ El primer error señalado por el peticionario es que la Junta erró al determinar que Acisclo González es Presidente de la filial local del Sindicato en Hatillo. En el récord hay evidencia para sostener la conclusión de la Junta al efecto de que González era el Presidente de la filial local del Sindicato, que requirió al patrono negociar colectivamente. No estamos en libertad de intervenir con esta conclusión, en vista de la disposición del artículo 9(2)(b) de la ley con respecto a que "las conclusiones de la Junta en cuanto a los hechos, si están respaldadas por la evidencia, serán . . . concluyentes." *Junta de Relaciones del Trabajo* v. *Namerow*, 69 D.P.R. 82.

■ Además, el patrono no tiene derecho a argüir que González no era el presidente debidamente electo de la unión. Desde luego, un patrono puede exigirle a cualquier persona

---

(¹)El artículo 5 de la Ley núm. 130, Leyes de Puerto Rico, 1945 (pág. 407), según fué enmendada por la Ley núm. 6, Leyes de Puerto Rico, 1946 ((1) pág. 19), prescribe en parte como sigue: "*Representantes y Elecciones.* (1) Los representantes designados o elegidos para contratar colectivamente por una mayoría de los empleados en una unidad apropiada para tales fines, serán los representantes exclusivos de todos los empleados en esa unidad de negociación colectiva . . .

"(2) A fin de asegurar a los empleados el pleno disfrute de sus derechos a organizarse entre sí, a negociar colectivamente, y de llevar a cabo los demás *propósitos de esta Ley*, la Junta decidirá en cada caso la unidad apropiada a los fines de la negociación colectiva."

El artículo 8(1)(d) dice que constituirá una práctica ilícita de trabajo el que un patrono "*Rehuse negociar colectivamente con el representante de una mayoría de sus empleados en una unidad apropiada de negociación colectiva, sujeto a las disposiciones del Artículo 5.*"

que pretenda representar a sus obreros o a la unión de éstos, que le enseñe sus credenciales. Pero de ordinario el patrono no puede ir más allá de dichas credenciales si éstas son auténticas. "Un patrono no tiene derecho a cuestionar el método de selección empleado por una unión para elegir su comité de negociación colectiva [o como aquí sucede, el Presidente de la unión]; eso es puramente un asunto que sólo compete a la unión." *In the Matter of Lane Cotton Mills Company et al.,* 9 N.L.R.B. 952, 968 (1938).

Finalmente, el peticionario ha interpretado en forma incorrecta el artículo 8(1)(*d*), que requiere que el patrono negocie colectivamente con "el representante de una mayoría de sus empleados". Esta disposición no le confiere al patrono el derecho de investigar los asuntos internos de la unión. Se refiere corrientemente a una unión que represente a los empleados, y no a la identidad de los funcionarios de la unión o del comité de negociación colectiva de ésta. Queremos hacer constar que al cumplir con la obligación que le impone el artículo 8(1)(*d*), un patrono que cree de buena fe que determinada unión no es el representante autorizado de sus empleados, puede cuestionar su autoridad al momento en que se le solicita que negocie colectivamente con ella. Pero cuando Rivera se negó a negociar en este caso, no levantó dicha cuestión. Por el contrario, insistió en que no firmaría convenio alguno hasta que hubieran firmado otros pequeños colonos de la vecindad. Desde luego, éste era un motivo impropio para negarse a negociar colectivamente. *In the Matter of Harbor Boat Bldg. Co. et al.,* 1 N.L.R.B. 349 (1936). Al asumir esta posición dió otros motivos similares que no es posible aceptar. Habiéndose demostrado que estas razones carecen de base legal, el patrono no puede, luego de haberse negado a negociar colectivamente con una unión, alegar por primera vez y tardíamente en un procedimiento ante la Junta que determinada unión no era el representante autorizado de sus empleados. *In the Matter of the*

*Solvay Process Company et al.,* 21 N.L.R.B. 882, 901 (1940);
*In the Matter of Lennox Furnace Co. et al.,* 20 N.L.R.B. 962,
980 (1940); *In the Matter of Art Metal Construction Company et al.,* 12 N.L.R.B. 1307, 1313–14 (1939); *In the Matter of Williams Coal Company et al.,* 11 N.L.R.B. 579, 600 (1939).

■ Si bien no tienen relación alguna con el primer error,
bajo el mismo la petición discute ciertas otras cuestiones.
Ninguna de ellas merece que la comentemos, con excepción de
la siguiente.

Rivera impugna la constitucionalidad de nuestra ley porque requiere el cumplimiento de ciertas obligaciones de parte
de los patronos y ninguna de los empleados. La Ley Wagner, contraria a nuestra Ley, no contenía disposición alguna
en cuanto a prácticas ilícitas del trabajo por parte de los
empleados. Empero, la Corte Suprema, en una opinión del
Juez Presidente Hughes sosteniendo la constitucionalidad de
dicha Ley Federal, empleó el siguiente lenguaje en el caso
de *N.L.R.B.* v. *Jones & Laughlin,* 301 U.S. 1, 46:

"Esta Ley ha sido criticada porque se aplica únicamente al patrono; porque impone al patrono condiciones restrictivas y de supervisión y no provee contra los abusos en que puedan incurrir los
empleados; porque no provee un plan más comprensible, —con mejores promesas de razonabilidad para ambos lados y con muchas más
oportunidades de éxito en alcanzar, si no obligar, soluciones equitativas de controversias industriales que afecten el comercio interestatal. Pero aquí estamos tratando con el poder del Congreso, no
con una política específica o con el alcance que ésta debe tener.
Frecuentemente hemos dicho que la autoridad legislativa, ejercitada
dentro de su campo apropiado, no necesita abarcar todos los males
a su alcance. La Constitución no impide el 'avance cauteloso, paso
a paso,' al combatir los males que surgen de las actividades al
alcance del poder legislativo."

■ Bajo el primer error el peticionario también se queja
de un "procedimiento inquisitorial" en el que la Junta es
parte y juez. Es cierto que la ley consolida en una agencia
no sólo el poder de investigar, iniciar y conducir al procedimiento, si que también el poder de oír y resolver los casos.

Pero la Legislatura tenía poder para así disponerlo. Con respecto a una contención de esta índole, hemos cumplido nuestra misión una vez que resolvemos, como aquí lo hacemos, que no existe evidencia en el récord demostrativa de que el Examinador o la Junta prejuzgaron el caso o actuaron con prejuicio. *N.L.R.B.* v. *Botany Worsted Mills,* 133 F.2d 876, 882 (C.C.A. 3, 1942); *Press Co.* v. *N.L.R.B.,* 118 F.2d 937, 940 (C.C.A., D.C., 1940).

██ El segundo error que señala el peticionario es que la Junta erró al determinar la unidad apropiada de empleados. Sin embargo, al argumentar este punto, el peticionario no ataca la conclusión de la Junta al efecto de que los empleados de las tres fincas constituyen una unidad apropiada para negociar. Más bien su contención es que la mayoría de sus empleados no pertenecían a la unión cuando ésta le requirió para que negociara con ella.

La Junta resolvió (1) que una mayoría de los empleados del peticionario—de 22, 12—había designado a la unión como su representante para negociar colectivamente. Además, resolvió (2) que una mayoría de los empleados había respaldado la huelga declarada por la unión. Aquí también el error señalado podría resolverse diciendo sencillamente que toda vez que el récord contiene evidencia para sostener la primera conclusión de que una mayoría de los empleados de Rivera pertenecía a la unión, la resolución de la Junta debe confirmarse en virtud del artículo 9(2)(*a*) de la ley.

Sin embargo, existe un factor adicional que demuestra que no se cometió el segundo error. La Junta no se detuvo al llegar a su primera conclusión de que una mayoría de los empleados había designado la unión como su representante. También resolvió que una mayoría había de hecho apoyado la huelga. Este último fallo reforzó la conclusión de hecho con respecto a la cuestión de la mayoría en este caso, en vista de la regla de que si existiere duda (que no existe aquí) en cuanto a si la unión tiene la mayoría, el hecho de que la

mayoría de los empleados como sucedió aquí, de hecho apoyara la huelga, es evidencia tendiente a demostrar que la unión que declaró la huelga representaba a la mayoría de los empleados. *In the Matter of Denver Automobile Dealers Association et al.*, 10 N.L.R.B. 1173, 1189 (1939); *In the Matter of Rabhor Co., Inc.*, 1 N.L.R.B. 470, 476 (1936); *In the Matter of Remington Rand, Inc.*, 2 N.L.R.B. 626, 643 (1937).

. Antes de terminar con este error, creemos aconsejable indicar que el peticionario empieza la discusión del mismo manifestando: "Se entiende por Unidad apropiada de obreros, una mayoría de los obreros bona fide del patrono querellado y que como tales hayan votado por mayoría en unas elecciones debidamente convocadas y que hayan resuelto su propósito de afiliarse a la Unión."

No estamos conformes con esta definición de una unidad apropiada para negociar. Al contrario, cuando determina cuál es tal unidad, la Junta no viene obligada a considerar qué unión, si alguna, tiene en su matrícula la mayoría de los empleados de un patrono específico. Más bien, una vez que determina cuál es la unidad apropiada para negociar, entonces se cerciora si una unión específica tiene la mayoría de la unidad que antes había determinado era la apropiada.

 De acuerdo con el artículo 5(2) de la Ley, la Junta tiene amplia discreción para determinar sobre una base flexible y funcional, qué es lo que constituye una unidad apropiada para negociar. Toma en consideración la Junta tales cuestiones como (1) el estímulo de negociación colectiva; (2) la historia de la negociación colectiva en el negocio del patrono específico y de la industria en su totalidad; (3) integración de los procesos del trabajo y de la administración; (4) habilidades de los empleados envueltos; y (5) los deseos de los empleados. Cox, *Cases on Labor Law*, págs. 855–62 (1948); 1 C.C.H. *Labor Law Reporter, Fourth Edition*, párrafo 2605, págs. 2721 *et seq.* Y la determinación de la Junta sobre cuál

es la unidad apropiada para negociar es concluyente y será confirmada cuando se nos presente en el caso apropiado, a no ser que tal decisión sea arbitraria o caprichosa. *Packard Co.* v. *N.L.R.B.*, 330 U.S. 485, 491; *N.L.R.B.* v. *Hearst Publications*, 322 U.S. 111, 134; *Pittsburgh Glass Co.* v. *N.L.R.B.*, 313 U.S. 146, 155–57; *N.L.R.B.* v. *Botany Worsted Mills*, supra, pág. 880; *N.L.R.B.* v. *Clarksburg Pub. Co.*, 120 F.2d 976, 980 (C.C.A. 4, 1941); *N.L.R.B.* v. *Lund*, 103 F.2d 815, 819 (C.C.A. 8, 1939).

█ Bajo el tercer error el peticionario se queja de que la Junta lo obligó a pagar "indemnización" a ciertos empleados. Si bien es difícil entender la exposición de este error, en el curso de su argumento el peticionario se queja de que la Junta no determinó la suma exacta de dinero a ser pagada a cada obrero y también sugiere que al computar esta cantidad, debe deducirse cualquier dinero ganado por el obrero en cualquier otro sitio.

Desde que la Ley Wagner fué aprobada en 1935, la Junta Nacional le ha estado concediendo compensación a los obreros por salario dejado de percibir con motivo de prácticas ilícitas del trabajo mediante resoluciones redactadas en términos generales. La computación de cantidades exactas ha sido dejada a la maquinaria administrativa de la Junta, con la cooperación del patrono, cuyas nóminas sirven de base para el cómputo definitivo. La resolución en este caso sigue esta pauta, la cual ha sido aprobada por las cortes. *Phelps Dodge Corp.* v. *N.L.R.B.*, 313 U.S. 177; *Wallace Corporation* v. *N.L.R.B.*, 159 F.2d 952 (C.C.A. 4, 1947); *N.L.R.B.* v. *New York Merchandise Co.*, 134 F.2d 949 (C.C.A. 2, 1943); *Marlin–Rockwell Corp.* v. *N.L.R.B.*, 133 F.2d 258 (C.C.A. 2, 1943). Y véase *Mine Workers* v. *Eagle–Picher Co.*, 325 U.S. 335.

█ Nuestra Ley es reparadora, no punitiva. Por consiguiente el peticionario tiene derecho, como alega, a deducir del importe adeudado a sus empleados cualesquiera sumas devengadas de otros patronos para quienes trabajaron du-

14

rante el período que no trabajaron para el peticionario, con motivo de las prácticas ilícitas del trabajo por parte del patrono. Pero no nos es posible comprender por qué el peticionario discute esta cuestión, ya que la resolución de la Junta contiene una disposición expresa a este efecto.

El cuarto error dice que la Junta demostró parcialidad y prejuicio contra el peticionario. No encontramos en el récord evidencia de que la Junta actuara en esta forma. Si algo surge del récord es tolerancia por parte del Examinador y de la Junta para el peticionario y su abogado, quien demostró tanto ante la Junta como ante este Tribunal falta de comprensión de los términos de la Ley y de los derechos de los empleados bajo la misma. Además, la Junta hizo ciertas modificaciones a las conclusiones del Examinador en favor del patrono, las cuales éste aparentemente no solicitó. Tal conducta no merece la seria, pero injustificada, imputación de parcialidad y prejuicio.

Aquí también el peticionario sigue su práctica de discutir cuestiones que nada tienen que ver con el error señalado. Bajo el cuarto error sostiene que la Junta no tenía autoridad para ordenarle en su Decisión y Orden que fijara un "Aviso a mis Empleados".

Este Tribunal constantemente lucha con tesón para mantener el ritmo de un calendario congestionado de casos que envuelven campos del derecho completamente diferentes. Podríamos ahorrar nuestro tiempo y energía para resolver cuestiones sustanciales, si los litigantes leyeran el estatuto de que se trata antes de levantar contenciones tan frívolas. El artículo 9(1)(b) expresamente confiere a la Junta poder para exigir la fijación de tal aviso.(²) Además, aun sin que la

(²)El artículo 9(1)(b) provee en parte: "Si de acuerdo con todas las declaraciones prestadas la Junta fuere de opinión de que cualquier persona, patrono u organización obrera expresados en la querella se ha dedicado o se dedica a cualquier práctica ilícita de trabajo, entonces la Junta manifestará sus conclusiones de hecho y de ley y expedirá orden y hará que la misma se le notifique a dicha persona, patrono u organización obrera, requiriéndole que cese en y desista de dicha práctica ilícita de trabajo y tome tal acción afir-

Ley Wagner así lo proveyera, varias órdenes de la Junta Nacional exigiendo tal fijación han sido confirmadas. *N.L. R.B.* v. *Greyhound Lines,* 303 U.S. 261; *N.L.R.B.* v. *Mackay Co.,* 304 U.S. 333; *N.L.R.B.* v. *Sunbeam Electric Mfg. Co.,* 133 F.2d 856, 861 (C.C.A. 7, 1943).

Bajo el cuarto error el peticionario también alega que ''la Junta carece de jurisdicción para obligar a un patrono a pagar jornales o indemnizaciones a obreros querellantes, gastos éstos que sólo pueden ser planteados ante un Tribunal de Justicia donde el patrono tenga más libertad de acción para defenderse de la reclamación en un juicio imparcial y contencioso.'' Una vez más el abogado del patrono ha dejado de leer la ley. El artículo 9(1)(*b*) expresamente confiere dicha autoridad a la Junta. Y resoluciones a tal efecto han sido uniformemente sostenidas bajo la Ley Wagner desde que una orden de esta naturaleza fué confirmada por primera vez en el caso de *N.L.R.B.* v. *Jones & Laughlin,* supra, pág. 48.

El quinto error es que la Junta erró al declarar sin lugar la moción del patrono para que se desestimaran los procedimientos por el fundamento de que él había vendido las tres fincas aquí envueltas. La orden de la Junta dice que el hecho de que estas fincas fueron vendidas por el peticionario, vino a su conocimiento luego de que el Examinador sometió su informe y recomendaciones. Por consiguiente modificó la orden sugerida por el Examinador con el fin de proveer compensación a los empleados envueltos solamente hasta la fecha en que el patrono vendió las fincas. La Junta dispuso asimismo que si Rivera volvía a adquirir estas fincas, debía al ser requerido negociar colectivamente con la

---

mativa que permita efectuar los propósitos de esta Ley, incluyendo, pero no limitándose a la reposición de empleados, abonándose o no la paga suspendida, *fijando o remitiendo por correo los avisos apropiados,* y poniendo fin a convenios colectivos, en todo o en parte, o cualquier otra orden contra tal persona, patrono, parte u organización obrera, que permita efectuar los propósitos de esta Ley. La orden podrá además requerir de tal persona, patrono u organización obrera que rinda informe de tiempo en tiempo, demostrando hasta qué punto ha cumplido con la misma.'' (Bastardillas nuestras).

unión como la representante exclusiva de sus empleados en las mismas. Y sustituyó la disposición ordenando que se fijara el aviso por la de que se enviara éste por correo a los empleados envueltos.

Una práctica ilícita de trabajo no se torna en académica porque el patrono venda su negocio. La Junta puede todavía dictar órdenes dirigidas al ex patrono que no sean incompatibles con la venta del negocio. Resolver lo contrario daría oportunidad a un patrono, sencillamente mediante el traspaso de su negocio, de evadir las obligaciones en que incurrió previamente en virtud de su conducta ilegal mientras lo explotaba. Órdenes como la del caso de autos han sido expedidas y confirmadas en un sinnúmero de casos. *Southport Co.* v. *N.L.R.B.*, 315 U.S. 100; *N.L.R.B.* v. *Cleveland–Cliffs Iron Co.*, 133 F.2d 295 (C.C.A. 6, 1943); *N.L.R.B.* v. *Killoren*, 122 F.2d 609 (C.C.A. 8, 1941); *Indianapolis Power & Light Co.* v. *N.L.R.B.*, 122 F.2d 757 (C.C.A. 7, 1941); *In the Matter of Ray Nichols, Inc. et al*, 15 N.L.R.B. 846 (1939); *In the Matter of Schieber et al.*, 26 N.L.R.B. 937 (1940).

Rechazamos el argumento final del peticionario incluído bajo el quinto error, al efecto de que la Junta podía ordenarle negociar colectivamente sólo para la zafra del año en que cometió la práctica ilícita al negarse a negociar. Según se desprende de este caso, tácticas dilatorias por parte de un patrono pueden dilatar la resolución final de tal caso para toda una zafra o por más tiempo. Convenir con el peticionario significaría por consiguiente en efecto práctico que la Asamblea Legislativa no tuvo la intención de que la ley se aplicara a los empleados que se dedican al cultivo y recolección de caña de azúcar. No podemos atribuirle tal intención a la Legislatura.

*La petición del patrono para que revisemos la Decisión y Orden de la Junta será declarada sin lugar, y se dictará sentencia poniéndola en vigor.*