JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* UNIÓN DE CHÓFERES Y MECÁNICOS NÚM. 1 DE SAN JUAN y RAMAS ANEXAS, INC., demandada.

Núm. 33.—*Sometido:* Agosto 26, 1952. *Resuelto:* Octubre 17, 1952.

990

*Hon. Procurador General Víctor Gutiérrez Franqui, Aurelio To-
rres Braschi, Procurador General Auxiliar* e *Hiram R. Can-
cio Vilella* y *Ramón Acevedo Oliveras,* abogados de la peti-
cionaria; *José M. Cueto, Enrique Cuilan García* y *Ángel L.
Saavedra,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión
del tribunal.

La Junta de Relaciones del Trabajo de Puerto Rico dictó
una orden dirigida a la Unión de Chóferes y Mecánicos
núm. 1 de San Juan y Ramas Anexas, Inc., para que (1)
cesara y desistiera en manera alguna de excluir o suspen-
der injustificadamente de la matrícula de esa organización
obrera a Teodoro Dones Mártínez o a cualquier otro em-
pleado en una unidad de nëgociación colectiva y en cuya re-
presentación la organización obrera haya firmado un conve-

nio de afiliación total, o de mantenimiento de matrícula de la Unión, y (2) para que tomara la siguiente acción afirmativa: (a) compensar al querellante Teodoro Dones Martínez, por las pérdidas sufridas en sus ingresos durante el tiempo en que estuvo suspendido de la matrícula de la Unión, y por ende, de su empleo, pagándole una suma de dinero igual a aquélla que él normalmente hubiera percibido por concepto de salarios desde el día en que se le despidió de su empleo y hasta el día en que fué repuesto en el mismo, después de deducirle los ingresos netos, si alguno, que durante ese mismo período hubiera percibido por concepto de salarios, y las cantidades, si alguna, que dejó de ganar durante ese período sin excusa justificada alguna en otros empleos disponibles, (b) colocar en sitios conspicuos de las oficinas de la Unión el aviso que se adhirió a la Orden y (c) notificar al Presidente de la Junta dentro de los diez días siguientes a la fecha de la Orden, qué providencias había tomado la Unión para cumplir con dicha Orden. La Unión no dió cumplimiento a la referida Orden y la Junta ha solicitado de nosotros que la pongamos en vigor. La Unión ha comparecido oponiéndose a que se ponga en vigor dicha Orden alegando para ello que la Junta cometió varios errores de hecho y de derecho, a los cuales nos referiremos más adelante y además porque la decisión y orden de la Junta resulta académica.

Los hechos que dieron lugar a la decisión y orden de la Junta pueden resumirse así: La Unión de Chóferes y Mecánicos núm. 1 de San Juan y Ramas Anexas, Inc., tenía firmado, para el año 1949 con la Autoridad de Transporte de Puerto Rico, División de Autobuses, un convenio colectivo que contenía una cláusula de taller cerrado. El empleado Teodoro Dones Martínez estaba cubierto por dicho convenio. Contra el empleado Dones se radicaron cargos ante la Unión, acusándosele de traición y deslealtad hacia su Unión. La Junta Directiva de ésta intentó infructuosamente en más de una ocasión de citar al empleado Dones para la vista de los

cargos formulados contra él. Finalmente se le citó para el 23 de agosto de 1949 a las 8:30 de la mañana. Ese día compareció Dones a eso de las 11:00 de la mañana pero ya la Junta le había juzgado no por los cargos originales sino por el de descato, surgido con motivo de su negativa a recibir la correspondencia de la Unión y a comparecer a las vistas a las cuales fué citado. Luego de dejar sin efecto un castigo de un año de suspensión que le había impuesto ese día, la Junta Directiva volvió a oír a Dones y se reafirmó en el castigo anterior. Notificado Dones por carta de dicha decisión y haciendo uso del derecho que le concedía el reglamento de la Unión apeló de dicha decisión para ante una Asamblea General. Ésta se celebró durante los días 13 y 14 de septiembre de 1949 y entre otros asuntos consideró la apelación interpuesta por Dones contra el castigo impuéstole por desacato. Considerada dicha apelación la Asamblea General impuso a Dones el mismo castigo de un año de suspensión por el cargo de desacato. El día 12 de septiembre Dones había jurado un cargo contra su Unión acusándola de haber incurrido en prácticas ilícitas de trabajo al separarlo injustificadamente de su matrícula. Después de una investigación preliminar se radicó ante la Junta en 8 de marzo de 1950 una querella contra la Unión fundada en el cargo jurado por Dones y después de seguirse el procedimiento de rigor, la Junta dictó la orden que nos pide ahora pongamos en vigor. La Unión querellada alega que al dictar dicha orden la Junta cometió los siguientes errores de hecho al hacer conclusiones que no están sostenidas por evidencia:

"(1) Al concluir que el querellante fué 'juzgado fundamental y primordialmente por actos de indisciplina, traición y conducta desleal para con la Unión que le estaba juzgando y por sus actuaciones, mientras era miembro de la anterior directiva de la Unión.'

"(2) 'al concluir que la evidencia extraña al desacato produjo en el ánimo de los allí presentes una actitud de prejuicio en contra del querellante'; y

"(3) Al concluir que 'cualquier intento de Dones para defenderse hubiese resultado inútil y no puede aceptarse por lo tanto que su actitud equivale a una renuncia de sus derechos'."

La Junta consideró probados, entre otros hechos, algunos de los cuales ya hemos relatado, los siguientes:

"Durante la asamblea del 13 uno de los miembros de la Unión presentó una moción para alterar la naturaleza de la asamblea convirtiéndola, de extraordinaria que era, en una Asamblea General. A la vez propuso que se alterara el orden del día en forma tal que el caso de Dones fuera considerado en primer lugar. Una vez aprobada esta moción, el Presidente Juan González Maldonado cedió la presidencia al Vicepresidente Díaz Mahonés, bajando él a la asamblea, desde donde procedió a presentar evidencia documental y a hacer comentarios desfavorables sobre las actividades de Teodoro Dones en relación con la Unión, sin limitarse al caso por desacato. Entre esta evidencia presentó una copia fotostática de una carta dirigida al patrono por Raimundo Lebrón, Presidente de la anterior directiva de la Unión y de la cual Dones formaba parte. En dicha carta Lebrón solicitaba del patrono que le hiciese ciertos favores relacionados con sus hijos que trabajaban en la Autoridad. La presentación de esta carta iba dirigida a conectar a Dones, quien había sido miembro destacado de la directiva bajo Lebrón, con un tipo de conducta patronal. Inmediatamente después, Maldonado presentó en evidencia ante la asamblea diversas copias de cuentas y desembolsos hechos a favor de Teodoro Dones mientras desempeñaba el cargo de Márshal en la anterior directiva. El Presidente hizo luego un recuento de todas las actividades de la directiva anterior a fin de conectar a Dones con el descrédito de ésta. El propio González Maldonado declaró en la asamblea que Dones había ofrecido a ciertos chóferes suplentes el conseguirles guaguas nuevas para su trabajo con el patrono, a cambio de que dichos obreros se unieran a un grupo encabezado por Dones que tenía como propósito derrocar la directiva. González pidió a algunos de esos chóferes que declararan ante la asamblea. Éstos así lo hicieron y confirmaron las palabras del Presidente. Finalmente, González Maldonado declaró ante la asamblea sobre una línea de conducta desleal de Dones para con la Unión, culminando con la aseveración de que Dones, quien constantemente estaba en contacto con el patrono, ofrecía a éste que, en caso de que la Unión declarara

una huelga, él se comprometía a traer suficientes rompehuelgas para que continuara el trabajo.

"Durante el curso de la asamblea también se presentó a la consideración de ésta los sobres contentivos de las cartas de citación dirigidas a Dones y se declaró al efecto de que el querellante se había negado a recibirlas. Fué ésta la evidencia relativa al desacato que se presentó en la asamblea.

"La asamblea del día 14 de septiembre de 1949, a la cual asistieron los obreros que el día anterior habían trabajado en el turno nocturno, fué presidida por el señor Díaz Mahonés, Vicepresidente de la Unión, debido a que el Presidente, Juan González Maldonado, no pudo estar presente. En dicha asamblea el señor Julio Sánchez Barroso hizo una relación de los cargos formulados contra Dones e inquirió de los presentes si tenían conocimiento de la conducta de éste en relación con la Unión. El señor Nery Pacheco consumió el próximo turno y 'explicó a la asamblea las muchas veces que se había sorprendido al señor Dones, calumniando y tratando con la parte patronal de desplazar la dirección de la Unión'. La próxima persona en dirigirse a la asamblea fué el señor Juan D. Lefebre, quien 'hizo lo mismo que el anterior, acusar al señor Dones de desleal en su procedimiento'. En la asamblea se presentó la misma evidencia documental que se había utilizado la noche anterior. A esta asamblea no compareció Dones.

"Esta Junta considera probado que la evidencia ofrecida a la asamblea celebrada los días 13 y 14 de septiembre de 1949, casi en su totalidad, no tenía relación alguna con el cargo de desacato que se le imputaba al aquí querellante."

Luego de citar aquella prueba documental y testifical que sirve de base a sus conclusiones, la Junta continúa diciendo:

"Todos los testimonios y evidencia anteriormente transcritos prueban sin lugar a dudas que el querellante fué juzgado en la asamblea de los días 13 y 14 de septiembre de 1949, no meramente por el acto de desacato que se le imputaba, sino fundamental y primordialmente por actos de indisciplina, traición y conducta desleal para con la Unión que le estaba juzgando y por sus actuaciones mientras era miembro de la anterior directiva de la Unión, la cual había sido suplantada por la directiva que presidía el señor González Maldonado.

"Es claro, además, que Dones no recibió notificación oficial alguna, ni verbal ni escrita, ni tampoco información de que en

la asamblea convocada para juzgarlo por el alegado desacato se iban a ventilar los cargos que originalmente se habían presentado contra él. Su carta solicitando llevar su caso ante la Asamblea General se refería exclusivamente al cargo de desacato.

"La evidencia presentada contra el querellante impugnó no solamente la lealtad de éste para con la Unión, sino también su honradez y solvencia moral. Todo esto produjo en el ánimo de los allí presentes una actitud de prejuicio en contra del querellante; actitud que se desprende del récord al citar el querellado las exclamaciones de los presentes durante el curso de la asamblea. . . . . ."

Hemos estudiado detenidamente toda la evidencia que tuvo ante sí la Junta, y sus conclusiones de hecho están amplia y sustancialmente sostenidas por dicha evidencia. No estamos en libertad de intervenir con esas conclusiones. Como dijimos en *Junta de Relaciones del Trabajo* v. *Namerow*, 69 D.P.R. 82, 87:

"No se nos han conferido poderes ilimitados para revisar las conclusiones de hecho de la Junta. El artículo 9(2)(*a*) de la Ley dispone que 'Las conclusiones de la Junta en cuanto a los hechos, si estuvieren respaldadas por la evidencia, serán concluyentes.' Sólo en caso de que el récord no contenga evidencia en apoyo de las conclusiones de hecho a que llegue la Junta, estaríamos autorizados para resolver, como cuestión de derecho, que las conclusiones de hecho, y la orden en éstas basada, no pueden subsistir."

Véanse, además, *Rivera* v. *Junta Relaciones del Trabajo*, 70 D.P.R. 5 y *Rivera* v. *Junta Rel. Trabajo*, 70 D.P.R. 342. No hay base, pues, para sostener que la Junta cometiera los errores de hecho que le imputa la querellada.

Pasemos ahora a los errores de derecho. Los tres primeros pueden resumirse (como lo hace la peticionaria) en uno solo: La Junta aplicó a la demandada el rigor de las Cortes de Justicia y al querellante la informalidad de los procedimientos administrativos, para concluir que el procedimiento ante la Unión fué nulo y que, en consecuencia, la suspensión de la matrícula fué injustificada.

En realidad toda la controversia que levantan estos tres primeros errores gira alrededor de la cuestión de si la Junta pretendió que la Unión aplicara en el juicio contra Dones el rigor de los procedimientos judiciales, especialmente las reglas de evidencia, o si por el contrario, todo lo que hizo fué exigir que en dicho juicio se observaran ciertos principios básicos de un debido procedimiento de ley.

Recuérdese que la Junta Directiva de la Unión juzgó y castigó a Dones, por el cargo de *desacato*, consistente en haber dejado de comparecer ante la Junta, a pesar de que fué citado oficialmente y en haberse negado a recibir las citaciones; que Dones apeló del castigo impuéstole—de un año de suspensión de la matrícula de la Unión, lo que implicaba un año de suspensión de empleo—para ante una Asamblea General de la Unión donde habría de ventilarse, mediante la celebración de una especie de *juicio de novo*, el cargo de desacato; que a pesar de esto, la Asamblea oyó principalmente prueba sobre los cargos originales de traición y deslealtad que aún están pendientes contra Dones, y que a base de esa prueba y de alguna incidental sobre el cargo de desacato, se ratificó el castigo que le había impuesto la Junta Directiva.

La notificación que sirvió la Unión a Dones para comparecer ante la Asamblea General hablaba de atender "el caso de su apelación, dictado por la Junta Directiva". Ese era el caso del *desacato* y no el de traición y deslealtad, sobre las cuales versó principalmente la evidencia presentada ante la Asamblea General. No hubo, pues, el requisito elemental de la notificación. No podía Dones defenderse de unos cargos que no estaban señalados para vista. El hecho de que incidentalmente se presentara prueba contra Dones relacionada con el desacato, no implica que se le diera una oportunidad razonable e imparcial para defenderse de dicho cargo.(¹) A este efecto la Junta se expresa así:

---

(¹) En *Dragwa* v. *Federal Labor Union*, 41 A.2d 32 (N.J., 1945), se dijo, refiriéndose al procedimiento en casos de expulsión de miembros, que:

"Dicho procedimiento cuasi judicial no tiene que conducirse con la

"¿Tuvo Teodoro Dones Martínez una vista imparcial ante la asamblea general? En nuestras conclusiones sobre los hechos señalamos que Dones compareció a la asamblea general a responder de un cargo de desacato, pero que sin embargo la casi totalidad de la evidencia presentada en su contra se relacionaba con los cargos de traición e indisciplina pendientes aún ante la Junta Directiva y con sus actividades como miembro de una directiva anterior antagónica a la que dirigía los destinos de la Unión. Incidentalmente se presentó a la asamblea la prueba contra Dones relacionada con el desacato. Así, el aquí querellante fué juzgado ante la asamblea primordialmente por cargos para dilucidar los cuales no se había celebrado una vista ante la Junta Directiva y que continuaban pendientes ante dicha Junta, violándose en esta forma el Reglamento de la Unión. Tales cargos, además, no constaban de la notificación que se le hizo para que compareciera ante la asamblea. El castigo impuesto por la Junta Directiva fué ratificado por una asamblea claramente prejuiciada contra Dones por la gran cantidad de evidencia de traición, indisciplina y falta de honradez que desfiló en su contra y no a base de la evidencia incidental que sobre el desacato también se presentó ante ella."

Respecto a la intervención de la Junta con la facultad de las uniones obreras para imponer medidas disciplinarias a sus miembros, bastará recordar la juiciosa política seguida por la propia Junta, expresada en la siguiente forma:

".... 'Una organización obrera capaz de mantener, en forma democrática y reglamentaria, la disciplina entre sus miembros,

formalidad y rigidez establecidas en nuestras cortes públicas, *pero en sus aspectos esenciales el procedimiento debe estar razonablemente de acuerdo con nuestra concepción ya aceptada de lo que es el debido procedimiento de ley.* La más elemental justicia natural requiere una citación, audiencia y oportunidad de presentar defensas con anterioridad a una condena. [Citas]." (Bastardillas nuestras.)

En *Harmon* v. *Mathews*, 27 N. Y. S.2d 656 (1941) se expresa el concepto del juicio imparcial (*fair trial*) de la siguiente manera:

"Indudablemente que a menos que su constitución provea otro método legal para ello, antes de que un miembro de una unión o de cualquier asociación voluntaria no incorporada pueda ser expulsado de ella a virtud de cargos, él tiene derecho a que se le informe de los cargos en su contra. Más aún, ya se celebre el juicio o vista ante la asociación o ante la entidad seleccionada por sus miembros para ello en fecha y sitio de lo cual a él se le notificará con razonable antelación, él tiene derecho a confrontarse con sus acusadores y los testigos en su contra, con una opor-

está coadyuvando al propósito de mantener la paz industrial. La imposición de medidas razonables de disciplina y el exigir responsabilidad a sus miembros son factores necesarios para hacer de una organización obrera una entidad responsable y fuerte que sirva de instrumento económico verdaderamente efectivo en el mantenimiento de la armonía y la comprensión entre capital y trabajo. Si restáramos autoridad a una organización obrera para tomar aquellas medidas internas necesarias al mantenimiento del más alto grado de cohesión, responsabilidad y disciplina entre sus asociados, no estaríamos efectuando a cabalidad los propósitos del estatuto que administramos. Ya hemos expresado nuestro propósito de intervenir lo menos posible, en las cuestiones internas de las organizaciones obreras. Esto no significa, sin embargo, que estamos dando mano libre a las organizaciones obreras para, a su capricho y absoluta discreción, imponer a sus miembros medidas irrazonables, que éstos no puedan cumplir y, como consecuencia, sus empleos queden afectados.' " *Rivera* v. *Junta Rel. Trabajo,* supra, a la pág. 351.

Concluímos que la Junta no cometió los tres primeros errores de derecho señalados por la demandada.

 El cuarto señalamiento de error, carece de méritos. La demandada sostiene que la Junta no podía asumir jurisdicción sobre la querella contra la Unión estando aún pendiente la apelación de Dones para ante la Asamblea General.

En primer lugar, la apelación se ventiló en las asambleas celebradas durante los días 13 y 14 de septiembre de 1949,

tunidad razonable para interrogarlos o contrainterrogarlos, examinar la evidencia y contestar, explicar, defenderse y presentar prueba y testimonios de testigos a su favor. *Esos derechos elementales que son esenciales a cualquier juicio justo, deben ser observados.* Eso no quiere decir que el procedimiento reconocido por el derecho común o definido por estatuto o regla por la que se conduzcan las cortes públicas o los organismos judiciales o cuasi judiciales, deban ser seguidos. Ello quiere decir que deben formularse los cargos y celebrarse un juicio o audiencia y el fallo o resolución ejecutarse de acuerdo con la constitución, reglamento interno y reglas de la asociación. De no existir disposiciones a ese efecto, o de ser las que existan contrarias a los dictados reconocidos de justicia natural, entonces el procedimiento debe ser análogo a los procedimientos judiciales que de ordinario se siguen en los tribunales públicos, por lo menos hasta el extremo en que se logre justicia substancial. [Citas]." (Bastardillas nuestras.)

mientras que la querella contra la Unión fué radicada el día 8 de marzo de 1950, cuando ya había terminado ante la Unión todo el proceso por desacato.

Es cierto que Dones juró el día 12 de septiembre de 1949, un día antes del señalado para la vista de su apelación, un cargo contra la Unión acusándola de prácticas ilícitas de trabajo. Para esa fecha ya la Unión había incurrido en tal práctica porque a pesar de que Dones notificó al secretario de la Unión el día 6 de septiembre "el deseo de que él va a llevar el caso a una Asamblea General y se abstenga de tomar acción", la Unión no le suspendió el castigo hasta que la Asamblea tomara acción, violando en esa forma su propio reglamento. (²)

■ Igualmente carece de méritos la contención de la querella al efecto de que la Decisión y Orden de la Junta resulta académica. Arguye que "en el presente caso esta Orden resulta académica e innecesaria . . . porque su contenido ha sido ya cumplido y realizado". Sin embargo, del récord no aparece, ni lo alega la Unión querellada en su alegato, que ésta haya dado cumplimiento a la acción afirmativa incluída en la Orden, entre ello, la de compensar al querellante Teodoro Dones Martínez, por las pérdidas sufridas en sus ingresos durante el tiempo de la suspensión de matrícula, y por ende, de empleo.

*Se dictará sentencia poniendo en vigor la orden de la Junta de acuerdo con lo solicitado en la petición.*

El Juez Presidente Señor Todd, Jr., no intervino.

---

(²) La sección A del artículo IV del Reglamento de la Unión querellada, después de facultar a su Junta Directiva para imponer sanciones a los miembros de la Unión, previa la formulación de cargos, dispone que:

"Entendiéndose que si la sanción que le sea impuesta por la Junta Directiva no estuviera a satisfacción del socio, éste informará al Secretario en el término de tres (3) días, después de haber recibido la notificación, el deseo de que él va a llevar su caso ante una Asamblea General, *y se abstenga de tomar acción.*" (Bastardillas nuestras.)

La Junta de Relaciones del Trabajo entendió, y la querellada no ha cuestionado el punto, que esa disposición sobre abstenerse de tomar acción es una de carácter imperativo y que la Unión venía obligada a suspender el castigo mientras se tramitaba la apelación.