Urgell Cuebas, Juez Ponente
*977 TEXTO COMPLETO DE LA SENTENCIA
Mediante el presente recurso la recurrente, San Pablo Home Care Inc. (San Pablo) solicita la revisión de tres resoluciones emitidas por el Departamento de Salud. En dichas resoluciones se deniega a San Pablo los Certificados de Necesidad y Conveniencia que la Ley Núm. 2 de 7 de noviembre de 1975, 24 L.P.R.A. see. 334 et seq., exige para el establecimiento de cualquier facilidad relacionada con servicios de salud.
Consolidados los tres recursos presentados, procedemos a denegar los mismos.
I
San Pablo es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico y dirigida a ofrecer servicios de enfermería, y otros relacionados, en el hogar. En marzo de 1995, San Pablo radicó ante el Departamento de Salud, en adelante, el Departamento, y de acuerdo a lo establecido en la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. see. 334 et seq., tres solicitudes para la emisión de Certificados de Necesidad y Conveniencia (C.N.C.). San Pablo solicitó dichos certificados como paso previo al establecimiento de tres centros de cuidado en el hogar. Estos centros estarían localizados en la región de salud de Bayamón y, específicamente, en las subregiones o áreas de salud de Bayamón, Cataño y Barranquitas. San Pablo acompañó con sus solicitudes, entre otros documentos, un estudio preparado por el perito, Dr. Eliezer Curet Cuevas, a fin de sostener la viabilidad de los tres centros de cuidado en el hogar en la región de salud de Bayamón.
El Departamento convocó a vistas administrativas, según lo requiere la Ley Núm. 2, supra, y el Reglamento Núm. 56 del Secretario de Salud. A la vista administrativa relacionada con el propuesto centro de cuidado para el área de Bayamón comparecieron como opositores Guaynabo Home Care Program, la Corporación de la Vegas, Inc., y Programa de Servicios de Salud en el Hogar San Lucas, en adelante, San Lucas. En el caso de Cataño, asistieron como opositores San Lucas, Guaynabo Home Care Program y Hospital Sin Paredes, Inc. Por último, a la vista sobre el establecimiento de un centro de cuidado en Barranquitas no comparecieron opositores.
San Pablo compareció a las tres vistas representado por el Sr. Jorge de Jesús, Director Ejecutivo del Hospital San Pablo; la Sra. Edda I. Reyes, Directora del Departamento de Trabajo Social del Hospital San Pablo; y el Dr. Curet Cuevas, en calidad de perito. Previa la celebración de las vistas, los oficiales examinadores designados por el Departamento, autorizaron a las partes a hacer uso de los mecanismos de descubrimiento de prueba.
Luego de escuchadas las partes, y estudiados el testimonio del perito y la documentación sometida, los oficiales examinadores recomendaron a la Secretaria de Salud denegar la concesión de los Certificados de Necesidad y Conveniencia solicitados. En los casos de Bayamón y Cataño, la oficial examinadora determinó que, como cuestión de hecho, "lo que pretende la proponente no es cubrir una necesidad no atendida, sino atender a aquellos pacientes que al presente ya se encuentran atendidos y que han sido atendidos a través de varios años por las agencias que sirven los municipios objeto de la propuesta. En otras palabras, la población de los municipios que nos ocupan no tiene la necesidad de otra agencia de salud en el hogar." Apéndice a los recursos de Revisión, a las págs. 176 (Núm. KLRA-96-00257) y 371 (Núm. KLRA-96-00115). Según esta oficial, San Pablo falló en cumplir con dos de los criterios establecidos en el Artículo VI (11) del Reglamento Núm. 56 y aplicables a los programas de servicios de salud en el hogar. Específicamente, en el caso de la *978 solicitud para el área de Bayamón, señaló que San Pablo incumple con el criterio referente a la proporción entre el número de agencias y el número de envejecientes, pues de aprobarse la agencia propuesta, habrían 5,125 envejecientes por agencia. Sobre esta misma propuesta, señaló, además, la oficial examinadora, que San Pablo incumplió con el criterio del número de pacientes atendidos por año, al no presentar evidencia sobre el número de pacientes atendidos por dos de las agencias que sirven el área de Bayamón. Apéndice, Revisión (Núm. KLRA-96-00257), a la pág. 180. Iguales deficiencias encontró la oficial en la propuesta dirigida al área de Cataño, ya que allí ya existe una agencia de servicio por cada 3,312 envejecientes. Tampoco allí demostró la proponente que las agencias operantes sirvieran por lo menos unos 500 pacientes por año. Apéndice Revisión (Núm. KLRA-96-00115), a la pág. 375. Por estas razones, la oficial examinadora recomendó que se denegasen los certificados solicitados.
En el caso de la propuesta para el área de Barranquitas, el oficial examinador coincidió en sus determinaciones de hechos, con muchos de los planteamientos realizados por San Pablo. En esta propuesta, concluyó el examinador, que San Pablo cumplía con el requisito de proporcionalidad entre las agencias presentes y el número de envejecientes, pues sólo una agencia de salud en el hogar sirve el área, aun cuando residen en la misma unos 11,614 envejecientes. Apéndice, Revisión (núm. KLAA-96-00283), a la pág. 5. Sin embargo, el examinador determinó que San Pablo incumplió con su deber de probar que la agencia existente atendió más de 500 pacientes durante el año anterior. A esos efectos, señaló el oficial que "la parte promovente tiene siempre el peso de la prueba y la obligación de poner al Secretario en posición de determinar si su propuesta cumple con los criterios reglamentarios generales y específicos.... No procede en derecho el que una parte que pudo haber obtenido evidencia para demostrar el cumplimiento de un criterio específico sustituya la misma por un estimado de su perito económico." Apéndice, Revisión, a la pág. 11. Aplicando el principio evidenciario de que toda evidencia suprimida voluntariamente se presume que hubiese sido adversa de haber sido presentada, 32 L.P.R.A. Ap. IV, R.16(5), el examinador halló motivo suficiente en este incumplimiento para recomendar que se denegara la solicitud de San Pablo. Tanto en este caso, como en los de Bayamón y Cataño, la Secretaria de Salud adoptó las recomendaciones sometidas por los oficiales examinadores.
Oportunamente, San Pablo solicitó la reconsideración de estas decisiones, pero todas fueron rechazadas de plano por el Departamento.
San Pablo recurre ante nos y, con respecto a las propuestas de Bayamón y Cataño, alega que el Departamento cometió tres errores, a saber: (1) que el Departamento incurrió en una interpretación errónea del Reglamento 56 en cuanto a la distribución poblacional por áreas, al incluir en su análisis agencias ubicadas en áreas o regiones distintas o fuera de aquélla que la proponente interesa servir, sin incluir la población de esas áreas; (2) al limitar la definición de envejecientes a aquellas personas mayores de 65 años; y (3) al acoger, en cuanto al número de personas servidas por agencia, determinaciones contrarias a la prueba sometida.
Respecto a la propuesta dirigida al área de Barranquitas, San Pablo alega la comisión de diez errores que, por estar íntimamente relacionados, pueden resumirse como una objeción a la forma en que la evidencia sometida fue apreciada por el examinador y a la aplicación por éste de principios evidenciarios alegadamente ajenos al procedimiento administrativo.
II
Antes de examinar las controversias presentadas, es necesario repasar el derecho aplicable a las mismas.
La Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. see. 334 et seq., tiene un claro propósito: dar una herramienta al Secretario de Salud para planificar, mediante la expedición de Certificados de Necesidad y Conveniencia (C.N.C.), el desarrollo de la infraestructura de salud en nuestro país. Tal planificación es "indispensable para atender adecuadamente las necesidades de salud de la población, controlar los costos de los servicios de salud y velar porque éstos se presten en aquellos núcleos poblacionales donde sean necesarios." Leyes de Puerto Rico, 1983, Hato Rey, Equity de Puerto Rico, 1983, pág. 403. La ley requiere que toda persona, natural o jurídica, obtenga un C.N.C. antes de comenzar con la operación de cualquier facilidad de salud o parte de la misma. *979 Mediante el mecanismo del C.N.C., entonces, el Secretario de Salud vela para que "se ofrezcan únicamente aquellos servicios de salud, se incurra en aquellas inversiones de capital, o que se adquieran aquellos equipos médicos altamente especializados, cuya necesidad y conveniencia haya sido previamente determinada" por el propio Secretario. Ibid.
Los programas de servicios de salud en el hogar están expresamente definidos en la Ley Núm. 2 y quedan indiscutiblemente dentro del ámbito de la misma. 
Esta ley autoriza al Secretario de Salud a adoptar un reglamento que le permita establecer aquellos criterios a considerar para expedir o denegar un C.N.C. Al mismo tiempo, el estatuto establece que entre dichos criterios entrarán la necesidad actual y proyectada que tiene la población a ser afectada por la transacción contemplada de los servicios que se proveerán mediante la misma; la existencia de alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer los servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante; y la relación entre el sistema de salud operante en el área y la transacción propuesta, entre otros criterios. Ley Núm. 2 de 7 de noviembre de 1975, Art. 3, 24 L.P.R.A. sec. 334(b).
Es el Reglamento Núm. 56 de 14 de agosto de 1986 el que establece los criterios específicos a ser utilizados para evaluar las solicitudes de C.N.C. presentadas al Secretario. Sobre este particular, el propio reglamento establece en su Artículo VI:

"El Secretario utilizará los criterios específicos que se exponen más adelante, al evaluar una solicitud de certificado de necesidad y conveniencia en adición [sic] a las guías generales que aparecen en el Artículo V de este Reglamento.

Cuando una solicitud compare favorablemente con todos los criterios aplicables, previa la celebración de vista y no haber oposición fundamentada, la solicitud deberá ser aprobada y se otorgará el certificado solicitado. Cuando la misma no llene uno o más de los criterios aplicables, la solicitud podrá ser denegada. El proponente deberá presentar la información requerida en su solicitud y suministrar evidencia para probar que se cumple con cada criterio aplicable a su caso. La responsabilidad mayor de producir información necesaria recae en el proponente...." .

Debemos enfatizar dos aspectos reseñados en los párrafos antes transcritos. Primero, que el Secretario tiene la potestad de rechazar cualquier solicitud que falle en cumplir con cualquiera de los requisitos establecidos. Segundo, es el proponente quien tiene el peso de la prueba para demostrar que su solicitud cumple con los requisitos delineados en el reglamento.
No podemos pasar por alto tampoco el hecho particular de que la Ley Núm. 2 permite al Secretario de Salud establecer una política pública determinada mediante el proceso de adjudicación, en lugar del usual proceso de reglamentación. Al respecto, el Tribunal Supremo ha señalado que "un estudio detenido de la Ley sobre Certificados de Necesidad y Conveniencia nos convence de que el Secretario tiene facultad para reglamentar y adjudicar al mismo tiempo. La formulación de política pública no se limita únicamente al mecanismo de reglamentación, sino que se extiende a la adjudicación." Por tanto, "cualquier ataque judicial a una determinación del Secretario al respecto afecta esa política pública...". Ruiz Hernández v. Mahíques, 120 D.P.R. 80, 80-87 (1987).
Este aspecto de la Ley Núm. 2 nos lleva a su vez al campo de la revisión judicial de las determinaciones cuasi judiciales de las agencias administrativas, asunto relevante al caso ante nuestra consideración.
Es doctrina conocida que los tribunales le deben el mayor respeto y deferencia a las actuaciones adjudicativas de las agencias administrativas; esto debido a la experiencia y conocimiento especializado de la agencia. Agosto Serrano v. F.S.E., 132 D.P.R. _ (1993); 93 J.T.S. 37. Los procedimientos y decisiones administrativas tienen a su favor una presunción de corrección que debe ser respetada mientras la parte que la impugne no produzca evidencia suficiente para derrotarla. Henríquez v. Consejo Educación Superior, 120 D.P.R. 194. La evidencia que debe presentar quien impugna la determinación administrativa es aquella "que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto [de] que el tribunal no pueda, concienzudamente, concluir que la *980 evidencia sea sustancial, en vista de la prueba presentada. ...y hasta el punto que se demuestre claramente que la decisión [de la agencia administrativa] no está justificada por una evaluación justa del peso de la prueba." Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953); Metropolitana, S.E. v. A.R.P.E., 139 D.P.R. _ (1995), 95 J.T.S. 39.
En adición, los tribunales sostendrán toda aquella determinación que esté sostenida por evidencia sustancial que conste en el expediente administrativo, P.R.TC. v. Unión Indepeniente Emp. Telefónicos, 131 D.P.R. _ (1993), 93 J.T.S. 93, entendiendo por evidencia sustancial aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión." Hilton Hotels v. Junta Salario Mínimo, supra. La existencia en el expediente de prueba conflictiva de la cual puedan inferirse conclusiones distintas a las que la agencia adopta, de por sí, no justifica la intervención judicial con la actuación administrativa. J.R.T. v. Línea Suprema, Inc., 89 D.P.R. 840 (1964).
Estos principios fundamentales están recogidos en la See. 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2175. Al referirse al alcance de la función revisora de los tribunales, dispone la L.P.A.U. que "las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". En lo que respecta a las conclusiones de derecho, "éstas serán revisables en todos sus aspectos por el tribunal", pero, aun en este último caso, el Tribunal Supremo ha señalado que las interpretaciones que hacen las agencias administrativas del alcance de sus facultades merecen gran deferencia judicial si son razonables y consistentes con su propósito legislativo. Colón v. Depto. Recursos Naturales, 130 D.P.R. _ (1992), 92 J.T.S. 51. Los tribunales, entonces, no están autorizados a intervenir con las determinaciones de la agencia, siempre y cuando las mismas no sean caprichosas, irrazonables o arbitrarias. Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692 (1975).
Examinemos ahora la aplicación del derecho antes expuesto a los recursos que nos ocupan.
III
San Pablo alega que el Departamento hace una interpretación errónea del Artículo VI (11) del Reglamento Núm. 56 cuando incluye agencias ubicadas en áreas y regiones distintas o fuera del área que ella interesa servir. Sin embargo, San Pablo no rechaza el hallazgo fundamental realizado por la oficial examinadora que presidió las vistas administrativas sobre las propuestas de Bayamón y Cataño: que dichas áreaslde salud ya se encuentran servidas por suficientes agencias de salud en el hogar. Del propio informe preparado por el perito de San Pablo surge que el área de Cataño es servida por cuatro agencias (San Lucas, Guaynabo Home Care, Hospital Sin Paredes y Enfermería Visitante) y los municipios que componen el área de Bayamón, por cinco (Condado Home Care, Guaynabo Home Care, San Lucas, Enfermería Visitante y Corporación de las Vegas). Apéndice, Revisión (Núm. KLRA-96-00257), a las págs. 30-32. Esta información también fue vertida personalmente por el Dr. Curet Cuevas en las vistas celebradas por el Departamento. Apéndice a la Revisión, a las págs. 263 (Núm. KLRA-96-00257) y 195-198 (Núm. KLRA-96-00115).
De igual modo, la oficial examinadora consideró probado que las agencias de cuidado en el hogar actualmente establecidas tienen la capacidad para atender más pacientes de los que en este momento sirven. Así lo afirmaron en las vistas los representantes de San Lucas. San Pablo no presentó evidencia que refutara esa información. Apéndice, Revisión, a las págs. 175-176 (Núm. KLRA-96-00257) y 369-371 (Núm. KLRA-96-00115).
Resulta de este análisis que la determinación del Departamento de que las áreas de Bayamón y Cataño se encuentran suficientemente servidas, no es una determinación caprichosa o irrazonable. Todo lo contrario, se trata de un juicio sustentado por la prueba presentada por las partes, incluso por aquella presentada por la propia solicitante. Como ya vimos, uno de los objetivos de la Ley Núm. 2 de 7 de noviembre de 1975 es que los servicios de salud se presten en aquellos lugares donde sean necesarios. El Departamento de Salud determinó, basándose en evidencia que consta en el expediente administrativo, que los servicios propuestos por San Pablo para las áreas de Bayamón y Cataño no son necesarios. Siendo el Departamento la agencia gubernamental llamada a implementar la Ley Núm. 2, y en ausencia de capricho, arbitrariedad o irrazonabilidad en tal implementación, estamos en la obligación de sostener la determinación impugnada. Concluimos, por tanto, que el primer error *981 señalado no se cometió.
Alega también San Pablo que erró el Departamento al definir la palabra "envejeciente," según ésta es utilizada en el Reglamento Núm. 56, como una persona mayor de 65 años. Según San Pablo, dicha • definición va en contra de la Carta de Derechos de nuestra Constitución y de la Ley Núm. 121 de 12 de julio de 1986, 8 L.P.R.A see. 341, conocida como la Carta de Derechos de la Persona de Edad Avanzada y en donde se define "persona de edad avanzada" como aquella persona de 60 años o más.
El Reglamento Núm. 56, efectivamente, no provee una definición para la palabra. Sin embargo, el Departamento ha utilizado la edad de 65 años como aquella que define el término por una razón sencilla: la gran mayoría de las personas que hacen uso de los servicios de salud en el hogar cubren el pago de los mismos a través del programa federal de Medicare, 42 U.S.C.A. see. 1395 et seq, programa que beneficia a personas de 65 años o más. Fue por esa razón que el Plan Estatal de Salud de 1980-1985 adoptó la edad de 65 años como criterio determinante y el mismo es tan válido hoy como lo era entonces, pues Medicare continúa utilizando esa edad como criterio de elegibilidad.
Por otro lado, el Departamento, que es la agencia gubernamental con experiencia y conocimiento especializado, llamada a aplicar el Reglamento Núm. 56, ha sido consistente en la utilización de este criterio. Así lo señaló la oficial examinadora que presidió las vistas administrativas de Bayamón y Cataño en los respectivos informes presentados a la Secretaria de Salud. Nuevamente, debemos la mayor deferencia a las decisiones del Departamento, decisiones que han estado marcadas por la consistencia y que delimitan una política pública definida. El segundo error señalado por la solicitante tampoco fue cometido.
Como tercer error, señala San Pablo que la oficial examinadora viene obligada a aceptar las determinaciones realizadas por el perito Dr. Curet Cuevas, en cuanto a los pacientes atendidos por las demás agencias de las áreas de Bayamón y Cataño. Sobre este aspecto, San Pablo no presentó cifras exactas que mostraran que las agencias de salud en el hogar que operan en las áreas de Bayamón y Cataño sirven a más de 500 pacientes cada una. En cambio, fundamentó su solicitud en un estimado preparado por el Dr. Curet Cuevas, sobre la base del número de envejecientes residentes en las áreas de Bayamón y Cataño y una tasa de utilización ("use rate") que el perito fijó en nueve por ciento (9%). Señala, además, San Pablo que ella no viene obligada a presentar las cifras solicitadas, pues el propio Departamento no lleva constancia de ellas y los opositores durante las vistas, proveyeron la información.
En su Artículo VI, el Reglamento Núm. 56 establece claramente que la responsabilidad mayor de producir información necesaria recae en el proponente. Entre la información necesaria se encuentra el número de pacientes atendidos por cada agencia que opera en el área, no una aproximación, estimado o promedio. La parte proponente viene obligada a demostrar que cada una de las agencias presentes atendió 500 o más pacientes en el último año. A fines de facilitar la producción de esta información, la oficial examinadora permitió a las partes la utilización de los mecanismos de descubrimiento de prueba, tal y como lo autoriza la L.P.A.U., Ley Núm. 170 de 12 de agosto de 1988, sec. 2158(a). Esto significa que San Pablo tuvo la oportunidad de obtener la información que le fue solicitada. No lo hizo, prefiriendo utilizar los estimados de su perito. Si bien es cierto que algunas de las agencias opositoras brindaron durante las vistas información sobre este particular, también lo es que San Pablo no produjo información sobre el número de pacientes atendidos por Guaynabo Home Care, Enfermería Visitante y Condado Home Care en las áreas de Bayamón y Cataño. Su incumplimiento sobre este extremo justifica plenamente la determinación tomada por la oficial examinadora.
En el caso de la solicitud de un C.N.C. para el área de Barranquitas, San Pablo también incumplió con el requisito de demostrar que las agencias allí operantes atienden un mínimo de 500 pacientes al año. Al respecto, señaló el oficial examinador que la parte promovente pudo haberle solicitado que se citara a los operadores de los servicios existentes en el área de servicios [en el hogar] para que testificaran y presentaran evidencia documental o testifical en cuanto al número de pacientes que atienden al año. Apéndice, Revisión (Núm. KLAA-00238), a la pág. 11. Aquí también tuvo San Pablo la oportunidad de obtener la información solicitada, pero no lo hizo.
En todos los recursos presentados San Pablo alega que los respectivos oficiales examinadores *982 erraron al invocar el principio, evidenciario según el cual toda evidencia voluntariamente suprimida por una parte se presume que sería adversa a esa parte, 32 L.P.R.A. Ap. IV, R. 15(6).
Ciertamente, cuando una agencia administrativa ejercita sus funciones cuasi judiciales, no está obligada a regirse por las Reglas de Evidencia. López Vives v. Policía de P.R., 118 D.P.R. 219, 231 (1987). Sin embargo, la agencia puede adoptar para sus procedimientos aquellas reglas que no sean incompatibles con la flexibilidad del proceso administrativo. La aplicación que realizaron los oficiales examinadores del inciso 6 de la Regla 15 de las Reglas de Evidencia, no constituyó un impedimento para que San Pablo presentara su prueba o refutara aquella presentada por los opositores a sus propuestas. En fin, ello no detuvo el proceso adjudicativo administrativo ni redujo en forma alguna su flexibilidad. Debemos concluir que este error tampoco fue cometido.
IV
Por todos los fundamentos antes expuestos, se deniegan los recursos de revisión judicial presentados.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 65
1. El Artículo VI, Sección 11, del Reglamento Núm. 56 "Para establecer todo lo relacionado con las solicitudes de certificado de necesidad y conveniencia y el otorgamiento de éstos" de 14 de agosto de 1986 establece como criterios específicos para el establecimiento de programas de servicios de salud en el hogar que:

"(1) El área geográfica servida por una agencia de salud del hogar debe coincidir con una (1) de las áreas de salud del Departamento de Salud.

(2) La relación de población por agencias de salud en el hogar será de una agencia por cada 6,000 envejecientes.

(3) No se considerarán oficinas adicionales en un área de servicio hasta tanto las oficinas existentes en esa área hayan alcanzado o sobrepasado un total de quinientos (500) pacientes atendios [sic] durante el año."

2. Es necesario señalar que muchas de las determinaciones de hechos parecen extraídas directamente del informe del perito de San Pablo, Dr. Curet Cuevas.
3. Según el Art. 1 de la ley, un programa de servicios de salud en el hogar es una institución que ofrece a pacientes servicios diestros de enfermería y otros servicios terapéuticos en el hogar. 32 L.P.R.A. sec. 334(o).
4. Debemos señalar en este punto que la palabra envejeciente no aparece en el Diccionario de la Lengua Española de la Real Academia Española (Edición de 1992).