JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* LÍNEA SUPREMA, INC., querellada.

*Número:* JRT-62-3          *Resuelto:* 27 de enero de 1964

*J. B. Fernández Badillo, Procurador General, José Orlando Grau,*
y *J. F. Rodríguez Rivera,* abogados de la peticionaria; *Miguel
A. Muñoz,* abogado de la querellada.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Se trata en este caso de una petición para que pongamos en vigor una orden de la Junta de Relaciones del Trabajo de Puerto Rico contra la querellada Línea Suprema, Inc. (¹)

---

(¹) Por la misma se ordena a la querellada, sus oficiales, agentes, supervisores, sucesores y cesionarios:

"1. Cesar y desistir de:

a) En manera alguna intervenir, restringir, ejercer coerción o intentar intervenir, restringir o ejercer coerción con sus empleados en el ejercicio de los derechos a organizarse entre sí; a constituir, afiliarse o ayudar a organizaciones obreras, negociar colectivamente a través de representantes por ellos seleccionados y dedicarse a actividades concertadas con el propósito de negociar colectivamente u otro fin de ayuda o protección mutua que les garantiza el artículo 4 de la Ley.

b) En manera alguna estimular, desalentar o intentar estimular o desalentar la matrícula de cualquier organización obrera de sus empleados, mediante discriminación al emplear, despedir o en relación con la tenencia de empleo u otros términos o condiciones de empleo.

2. Tomar la siguiente acción afirmativa que consideramos efectúa los propósitos de la Ley:

a) Ofrecer reposición inmediata a sus antiguos empleos, bajo condiciones de empleo iguales a la de sus demás empleados de igual categoría, a sus empleados Salvador López y Ramón Rodríguez y, de no existir estos empleos u otros sustancialmente equivalentes a los que éstos desempeñaban con anterioridad a sus despidos y compensarlos por las pérdidas que éstos hayan sufrido en sus ingresos por la negativa a emplearlos desde el momento de sus despidos hasta el 3 de noviembre de 1960, fecha correspondiente a nuestro Proyecto de Decisión y Orden en el caso e igualmente desde la fecha de la presente Orden hasta la fecha en que les sea ofrecido empleo. Deberá pagárseles una suma igual a aquella que ellos normalmente hubiesen percibido des-

El 30 de noviembre de 1959 el Sindicato de Trabajadores UPWA-AFL-CIO radicó un cargo ante la Junta imputándole a la Línea Suprema, Inc., la violación de los incisos 1 (a) y (c) del Art. 8 de la Ley de Relaciones del Trabajo (29 L.P.R.A. sec. 61 y sgtes.) El 2 de marzo de 1960 la Junta expidió una querella alegando el despido discriminatorio de los empleados Salvador López, Ramón Rodríguez y Aureliano Rodríguez, además de ciertos actos de intervención y coerción alegadamente realizados por la querellada.

Vistas públicas fueron celebradas en el período comprendido entre el 24 de marzo y el 6 de abril de 1960. El Oficial Examinador que presidió las audiencias cesó en sus funciones con anterioridad a la preparación del informe correspondiente. ([2]) Así en 19 de septiembre de 1960 la Junta expidió una orden para trasladar el caso ante ella misma. Emitió un Proyecto de Decisión y Orden el 3 de noviembre de 1960, en el que expuso sus Propuestas Conclusiones de Hecho y Derecho y su Propuesta Orden. En dicho Proyecto de Decisión y Orden concluyó que la querellada no había incurrido en violación alguna de la Ley de Relaciones del Trabajo de Puerto Rico.

Se concedió adecuada oportunidad a las partes para someter objeciones a la orden propuesta y oportunamente se radica-

---

pués de deducirles el ingreso neto, que durante dichos períodos hubiesen o debieran haber percibido.

b) Fijar inmediatamente en sitios conspicuos de su negocio copias del Aviso que como Apéndice 'A', se une a esta Decisión y Orden y se hace formar parte de la misma, y mantener dichas copias fijadas por un período no menor de treinta (30) días consecutivos desde la fecha de su fijación.

c) Notificar al Presidente de la Junta dentro de los diez (10) días siguientes a la fecha de esta Orden, qué providencias ha tomado la querellada para cumplir con lo ordenado."

(El Aviso que se une como Apéndice "A" contiene esencialmente lo comprendido en la Orden.)

([2]) Dicho Oficial Examinador renunció su cargo en la Junta de Relaciones del Trabajo para asumir la plaza de Secretario Auxiliar de Instrucción Pública. Véase Orden de la Junta de 19 de septiembre de 1960 (Caso Núm. CA-2283).

ron alegatos tanto en apoyo como en oposición a la referida orden.

Luego de considerar toda la documentación radicada, en 31 de agosto de 1961 emitió la Junta su Decisión y Orden Núm. 254, mediante la cual revocó las conclusiones contenidas en el Proyecto de Decisión y Orden preliminar. Concluyó finalmente que la querellada había despedido discriminatoriamente a sus empleados Salvador López y Ramón Rodríguez, contraviniendo lo dispuesto en el Art. 8, incisos 1 (a) y (c) del mencionado estatuto. Respecto al empleado Aureliano Rodríguez determinó que no fue discriminatoriamente despedido, por lo que ordenó la desestimación de aquellas alegaciones de la querella referentes a él.

En su extensa contestación a la petición presentada ante nos la querellada formuló las siguientes defensas:

PRIMERA: Que la querella expedida por la Junta a instancias del Sindicato no expone hechos que justifiquen la expedición de un remedio; SEGUNDA: Que no presentó el Sindicato hechos que justificaran derecho alguno de su parte que defender en un caso de esta naturaleza; TERCERA: Que no aparece del récord que dicho Sindicato hubiese sido certificado como entidad gremial para negociar colectivamente a nombre y en representación de los empleados de la querellada como tampoco aparece que hubiese cumplido con los requisitos de la ley a esos efectos.

Mediante su CUARTA defensa ataca la actuación de la Junta al revocar su Proyecto de Decisión y Orden.

▆▆▆ No procede la primera defensa a la luz del criterio que ha de imperar cuando se trata de considerar la suficiencia de una querella expedida por la Junta de Relaciones del Trabajo en la que se imputa la comisión de prácticas ilícitas. Ese criterio no puede ser el mismo que cuando se trata de un pleito entre particulares en el que se dilucidan derechos privados. Debe tenerse presente que el procedimiento que se inicia con la radicación de cargos ante la Junta y la subsiguiente expe-

dición de querella por ésta, es de naturaleza preventiva que se realiza en interés general. "La única función de la querella es informar al querellado de los cargos que constituyen prácticas ilícitas de trabajo, según las define la Ley, de modo que tenga debida notificación y completa oportunidad de ser oído. La Ley no requiere la particularidad de las alegaciones así como tampoco los elementos de causa tal y como se requiere en una demanda en derecho. Todo lo que se requiere en una querella válida ante la Junta es que contenga una exposición sencilla de las cosas que se alegan constituyen la práctica ilícita de trabajo de manera que se coloque al querellado en condiciones de poder defenderse. *Texas & Pacific Railroad Co.* v. *Interstate Commerce Commission,* 162 U.S. 197, 215, 16 S.Ct. 666, 40 L.Ed. 940; *Cincinnati, Hamilton & Dayton Railway Co.* v. *Interstate Commerce Commission,* 206 U.S. 142, 149, 27 S.Ct. 648, 51 L.Ed. 995." *N.L.R.B.* v. *Piqua Munising Wood Products Co.,* 6 L.R.R.M. 828, 833, 109 F.2d 552, 557 (1940); *Consumers Power Co.* v. *N.L.R.B.,* 6 L.R.R.M. 849, 853–54, 113 F.2d 38, 43 (1940).

Ese mismo criterio liberal que reconoce que el logro de los amplios propósitos de la Ley no debe ser obstaculizado por tecnicismos procesales lo vemos consagrado en el Reglamento Núm. 2 promulgado por la Junta (Capítulo 3, Subcapítulo 64, 29 R.&R.P.R.). Dispone así en su Sec. 31:

"Las Secs. 64–1 a 64–33 de este título serán liberalmente interpretadas a los fines de efectuar los propósitos de la Ley."

█ Teniendo ello en mente, un examen de las alegaciones contenidas en la querella nos ha convencido de su suficiencia.

█ Tampoco le asiste la razón en sus defensas segunda y tercera. Baste con repetir parte de la cita que en *Quiñones* v. *Junta Relaciones del Trabajo,* 69 D.P.R. 593, 596–7 (1949), se hiciera de *Nat. Licorice* v. *Labor Board,* 309 U.S. 350, 362–5 (1940):

"El procedimiento autorizado a llevarse a cabo por la Junta bajo la Ley Nacional de Relaciones del Trabajo no es uno para

adjudicar derechos privados . . . Tiene pocos indicios de un pleito privado y no exige la comparecencia de cualquier parte privada que no sea la del patrono a quien se le imputan prácticas ilícitas de trabajo. La Junta actúa en una capacidad pública para darle efecto a la política pública declarada en la Ley. . . .

"Aquí el derecho que reclama la Junta no es uno que surge o se deriva de contratos entre el peticionario y sus empleados, la Junta reclama un derecho público conferídole en su calidad de entidad pública, a quien el interés público impone el deber de evitar prácticas ilícitas del trabajo. . . ."

■ Actúa igualmente en nuestro caso la Junta en su capacidad pública para hacer cumplir, en interés público, los propósitos de la ley sin que haya sido necesario la comparecencia del Sindicato para que pudiera ella determinar si se infringieron algunos de los preceptos de aquélla. No tenía, por lo tanto, el Sindicato derecho alguno que justificar, ni era material que hubiera sido certificado como entidad gremial. Como acertadamente sostiene el Procurador General: "El Sindicato no podía alegar derecho alguno en el presente procedimiento—salvo aquéllos que pudieran corresponderle en la adjudicación de los derechos públicos—porque la Junta no hubiera sido el foro adecuado para adjudicarlo." (Pág. 6, Alegato de Réplica de la Peticionaria.) Es decir, los derechos del Sindicato, en este procedimiento, son sólo aquéllos contenidos en la Ley y es a la Junta, a quien por virtud de esa misma ley, compete invocarlos. Dice así el Art. 7(a) de la Ley (29 L.P.R.A. sec. 68):

"La Junta tendrá facultad, según se dispone más adelante en este subcapítulo, para evitar que cualquier persona se dedique a cualesquiera de las prácticas ilícitas de trabajo . . . *Esta facultad será exclusiva y no la afectará ningún otro medio de ajuste o prevención.*"

La cuarta defensa levantada impugna la actuación de la Junta al revocar su Proyecto de Decisión y Orden del 3 de noviembre de 1960 mediante la Decisión y Orden que ahora se

nos pide poner en vigor. Discute, además, otros planteamientos a los que nos referiremos más adelante.

■ No encontramos que haya actuado incorrectamente la Junta. El Art. II, Sec. 9 del Reglamento Núm. 2 de la Junta (³) la faculta para, durante la audiencia, después de terminada ésta y con anterioridad al informe del Oficial Examinador, trasladar el caso ante ella mediante orden especial. Fue en virtud de la orden trasladando el caso que la Junta preparó su Proyecto de Decisión y Orden. Pero el referido proyecto no constituía la disposición definitiva del caso. Venía a hacer las veces del informe que ordinariamente somete el Oficial Examinador. Así podía, luego de dar la adecuada oportunidad a las partes para presentar sus objeciones al proyecto y a base del expediente completo del caso, resolver en la forma que estimara conveniente. Dispone la Sec. 11 del Art. II del Reglamento citado:

"Al expirar el período para la radicación de la exposición de excepciones y alegato como se dispone en esta sección, la Junta podrá decidir la cuestión inmediatamente a base del expediente completo o después de argumentación oral; o podrá reabrir el expediente y recibir evidencia adicional a presentarse ante un miembro de la Junta o ante un oficial examinador o podrá cerrar el caso siguiendo las recomendaciones contenidas en el informe del oficial examinador; *o podrá resolver el caso en cualquier otra forma.*"

Tenía facultad, por lo tanto, para decidir finalmente en forma distinta a la consignada en el Proyecto.

■ Sostiene el apelante que la Junta mediante su Orden de agosto 31 de 1961 le dio efecto legal y ratificó los fundamentos de hecho y de derecho de su primer Proyecto de Orden. Cita para ello aquella parte de la orden que dispone de paga atrasada en favor de los empleados "desde el momento de sus despidos hasta el 3 de noviembre de 1960 correspondiente a nuestro Proyecto de Decisión y Orden en el caso . . ." No tiene

---

(³) Corresponde a la Sec. 10 del actual Reglamento.

razón. Esa disposición de la Orden que exluye del cómputo de la paga atrasada el período comprendido entre la fecha del informe del Oficial Examinador desestimando la querella (la fecha del Proyecto de Decisión y Orden en nuestro caso) y la fecha en que se dicta la orden definitiva ordenando la reposición, en vez de perjudicarle, le favorece. Normalmente el empleado tiene derecho a paga atrasada desde la fecha en que se le despidió discriminatoriamente hasta la fecha en que le sea ofrecido empleo. En ocasiones como la del presente caso, sin embargo, se justifica la norma moderadora que permite excluir del cómputo el período señalado, por entender que ha descansado el patrono de buena fe en la solución que a su favor originalmente se hiciera del caso, no debiendo esperarse que restituyera al empleado en ese período. La Junta Nacional hace aplicación de ese criterio en *E. R. Haffelinger Co.*, 1 N.L.R.B. 760, 767 (1936). La exclusión del mencionado período responde claramente a consideraciones de equidad que están en armonía con la naturaleza reparadora, mas no punitiva, que caracteriza a nuestra Ley de Relaciones del Trabajo. Véase *Rivera v. Junta Relaciones del Trabajo*, 70 D.P.R. 5, 13 (1949).(⁴) Para una interesante discusión sobre este. punto, diríjase a 48 Yale L.J. 1265. En cuanto a otros casos que han aplicado un método similar al aquí usado, *N.L.R.B. v. Pyne Molding Corp.*, 226 F.2d 818, 37 L.R.R.M. 2007; *Banner Die Fixture Co.*, 115 N.L.R.B. No. 262, 38 L.R.R.M. 1149.

---

(⁴) Debemos anotar, no obstante, la reciente decisión de *N.L.R.B.* v. *A.P.W. Products Co.*, 316 F.2d 899, de abril 25 de 1963, en donde la Junta Nacional al revocar a Haffelinger descarta la norma moderadora a pesar de haberla sancionado por espacio de 26 años. Dice la Junta que la regla sentada en Haffelinger "operó en dirección beneficiosa para el malhechor a expensas del perjudicado—un resultado antiético al propósito fundamental de los poderes y autoridad remedial de la Junta." Para otro caso ratificando el nuevo curso de la doctrina sentada en *A.P.W. Products Co.*, véase *Reserve Supply of L.I., Inc.* v. *N.L.R.B.*, 317 F.2d 785 de mayo 27 de 1963. Véase también *J.R.T.* v. *Ceide*, 89 D.P.R. 674 (1963).

■ No se nos pide que revisemos el método utilizado por la Junta al computar la paga atrasada. Debemos aceptarlo por considerar que la concesión de ese remedio queda confiado a su amplia discreción, en ausencia de una demostración de un mal uso de esa discreción. *Phelps Dodge Corp.* v. *N.L.R.B.*, 313 U.S. 177, 198 (1941); *N.L.R.B.* v. *East Texas Steel Castings Company*, 255 F.2d 284 (1948); 48 Yale L.J., *supra*, pág. 1273.

■ Por último, se intenta, en términos generales, atacar las conclusiones que de los hechos hiciera la Junta al determinar que se incurrió en las alegadas prácticas ilícitas. Hemos hecho un cuidadoso examen de toda la documentación ante nuestra consideración, encontrando que existe suficiente evidencia para sostenerlas. Ante esa situación no estamos permitidos a intervenir. Dijimos en *Junta Relaciones del Trabajo* v. *Namerow*, 69 D.P.R. 82, 87 (1948):

"No se nos ha conferido poderes ilimitados para revisar las conclusiones de hecho de la Junta. El artículo 9(2)(a) de la Ley dispone que 'Las conclusiones de la Junta en cuanto a los hechos, si estuvieren respaldadas por la evidencia, serán concluyentes.' Sólo en caso de que el récord no contenga evidencia en apoyo de las conclusiones de hecho a que llegue la Junta, estaríamos autorizados para resolver, como cuestión de derecho, que las conclusiones de hecho, y la orden en éstas basada, no pueden subsistir."

■ Aunque estamos conscientes que existe prueba conflictiva de la cual podamos inferir conclusiones distintas a las de la Junta, sin embargo, ésa es misión que no nos pertenece. La determinación en cuanto a testimonio conflictivo concerniente al despido de empleados y la deducción de inferencias de hechos establecidos en la vista "caen dentro de la competencia de la Junta y no debemos pasar sobre la credibilidad de testigos o repesar la evidencia. Nuestra función es tomar el récord en su totalidad y poner en vigor la orden si encontramos evidencia sustancial para sostener las conclusiones de la Junta. *N.L.R.B.* v. *Ferguson*, 5 Cir., 1958, 257 F.2d 88; *N.L.R.B.* v. *Fox Manufacturing Company*, 5 Cir., 1956, 238

850

F.2d 211; *Universal Camera* v. *N.L.R.B.*, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; y *N.L.R.B.* v. *Walton Manufacturing Co.*, 1962, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829." *N.L.R.B.* v. *Transport Clearings, Inc.*, 311 F.2d 519, 523 (1962).

Aunque de ordinario precede a la decisión de la Junta un informe del Oficial Examinador que presidió la vista del caso, el hecho de no existir aquí el mismo no debe alterar la aplicación de los principios enunciados. Esto es así si consideramos la especialización y experiencia de la referida agencia administrativa para bregar con estos problemas. Sí, por el contrario, debe dar base para que en nuestro examen de todo el récord seamos más rigurosos que de costumbre. Hemos tenido eso en cuenta. Aun así, existe suficiente evidencia en el caso para sostener las conclusiones de la Junta.

*Se pondrá en vigor la Orden emitida.*