González Román, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El Sr. Emilio Marrero Crespo (Sr. Marrero) solicita la revisión de una resolución emitida por la Administración de Reglamentos y Permisos (A.R.P.E.) el 2 de marzo de 1998, notificada en esa misma fecha al recurrido, la cual autorizó la expedición de un permiso de uso solicitado por el Sr. Juan Bautista H/N/C Legno Corp. (Sr. Bautista) para operar el Ristorante Casa di Legno, ubicado en la Calle María Moczó en el sector Ocean Park de Santurce. A.R.P.E. no le notificó dicha resolución al Sr. Marrero. No obstante, por órdenes del Tribunal de Primera Instancia, tal notificación se efectuó el 25 de agosto de 1998, siendo ésta la fecha en que comenzó a decursar el término para solicitar la revisión judicial. Aunque dicho término hubiera expirado el 24 de septiembre de 1998, en virtud de la extensión de términos decretada por razón del paso del Huracán Georges, el recurso está en término. Por los fundamentos expresados a continuación, revocamos.
El Sr. Bautista solicitó de A.R.P.E. un permiso de uso para operar un restaurante de comida italiana en la Calle María Moczó número 57 del barrio de Santurce, sector Ocean Park, del Municipio de San Juan (caso núm. 97-18-E-292-SPU). Al enterarse de lo anterior, el Sr. Marrero presentó, el 31 de octubre de 1997, una oposición a la concesión de dicha solicitud (caso núm. 97-18-E-988-SPQ). En su oposición, el Sr. Marrero sostuvo que el restaurante propuesto carecía del número de espacios de estacionamientos requeridos para ese tipo de negocio, *590 que se había realizado una ampliación en la estructura donde sería ubicado el negocio la cual se eliminó tras orden judicial por carecer del permiso pertinente, y que al evaluar la concesión del permiso, A.R.P.E. tendría que aplicar ciertas restricciones de horario, pues dicha agencia ya había decidido, en relación al establecimiento que anteriormente ocupaba el local en cuestión (Mona's), que éste sólo podía operar hasta las 12:00 de la medianoche. El 4 de noviembre de 1997, el Sr. Marrero le envió una comunicación a A.R.P.E. a los fines de que tomara conocimiento de las determinaciones de hechos que dicha agencia había formulado en el caso del restaurante/bar Mona's (Caso Núm. 85-18-F-779-SPP). Allí, A.R.P.E. determinó que los problemas que ocasionaba aquel establecimiento se reducían a: a) congestión vehicular; b) obstaculización de las entradas y salidas de residencias y de aceras en la calle María Moczó; y c) malos olores y ruidos originados en el local.
El 25 de noviembre de 1997, el Ledo. Juan M. Masini Soler (Sr. Soler), Presidente y Asesor Legal de la Asociación Ocean Park, Inc., también objetó ante A.R.P.E. la concesión del permiso solicitado alegando problemas de estacionamientos y congestión vehicular. Por su parte, el 23 de febrero de 1998, los vecinos hicieron lo propio aduciendo similares argumentos, incluyendo problemas de estacionamiento, ruido, contaminación, congestión vehicular y delincuencia.
El 18 de febrero de 1998, la Compañía de Turismo endosó la emisión del permiso de uso para el restaurante con la condición que se cumplieran con los requisitos de estacionamientos exigidos por A.R.P.E.
El 2 de marzo de 1998, A.R.P.E. emitió la resolución recurrida autorizando la emisión del permiso de uso, sujeto a una serie de condiciones. Inter alia, A.R.P.E. sujetó la vigencia de la autorización a que Casa di Legno no contaría con un área de barra y que el local se tendría que mantener limpio, seguro y libre de tertulias. Tras varios incidentes procesales, incluyendo la consolidación de los casos Núm. KLRA-98-00588 y Núm. KLRA-98-00774, A.R.P.E. expidió oficialmente el permiso de uso Núm. 97-18-E-292-SPU, para operar el Ristorante Casa di Legno a nombre del Sr. Pierre Paul St. Hubert. 
En su recurso, el Sr. Marrero plantea que A.R.P.E. erró al conceder el permiso para operar el Ristorante Casa di Legno pues no celebró vista evidenciaría; que erró al conceder dicho permiso pues al así hacerlo le requirió menos estacionamientos, dieciséis (16) en total, que los diecinueve (19) que anteriormente le había requerido al restaurante/bar Mona's; y que gran parte de los estacionamientos aprobados no eran “funcionales” violando la reglamentación vigente. En el recurso originalmente identificado como Núm. KLRA-98-00774, el Sr. Marrero alegó, además, que A.R.P.E. erró al “conceder una variación de uso sin vista pública” al emitir dicho permiso y que dicho permiso no cumple con la reglamentación vigente al no limitar su horario de operación.
Como cuestión de umbral, conviene aquí repasar el ámbito de la revisión judicial de las decisiones de los organismos administrativos, según delimitado por la ley y la jurisprudencia. 
La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A., sec. 2175, establece, en relación al alcance de la revisión judicial:

“[...] Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el Tribunal. ”

Según el citado estatuto, las determinaciones de hechos en las que la agencia basa su decisión, no se revisarán judicialmente si están sostenidas por evidencia sustancial que obre en el expediente administrativo. Evidenciá sustancial es aquella prueba que una mente razonable podría aceptar como adecuada para sostener una *591 conclusión. Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Editorial Forum, Bogotá, 1993, págs. 527-544.
Así, el ordenamiento administrativo presume la corrección de los procedimientos y decisiones administrativas aunque exista prueba conflictiva de la cual se pueda inferir una conclusión distinta a la que arribó la agencia. Junta de Relaciones del Trabajo v. Línea Suprema, 89 D.P.R. 840 (1964). Por ello, corresponde a la parte que impugna los hechos determinados por la agencia demostrar que la prueba en el expediente administrativo es suficiente para derrotar la presunción que la agencia tiene a su favor. Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987).
Por su parte, las conclusiones de derecho de la agencia, a diferencia de las determinaciones de hechos, pueden ser revisadas en todos sus aspectos por el tribunal sin sujeción a norma o criterio alguno, pues el Poder Judicial es el verdadero experto en materia de construcción estatutaria y hermenéutica jurídica, similar a una corte de casación. Véase, e.g., Miranda v. C.E.E, 141 D.P.R. _ (1996), 96 J.T.S. 137. Lo mismo aplica a las cuestiones mixtas de hecho y derecho, pues se consideran como cuestiones de derecho si no involucran interpretaciones efectuadas dentro de la pericia particular de la agencia. Véase, Rivera v. A & C Dev. Corp., 144 D.P.R. _ (1997), 97 J.T.S. 143.
Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, el Tribunal Supremo ha reiterado consistentemente que, de ordinario, los tribunales deben deferir a las interpretaciones y conclusiones de derecho de los organismos administrativos. Véanse, e.g., Metropolitana S.E. v. A.R.P.E., 138 D.P.R. _ (1995), 95 J.T.S. 39; Fuertes y otros v. A.R.P.E., 134 D.P.R. _ (1993), 93 J.T.S. 165; Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. _ (1993), 93 J.T.S. 88; Viajes Gallardo v. Clavell, 131 D.P.R. _ (1992), 92 J.T.S. 90; Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991).
Esta deferencia se debe al reconocimiento de que “las agencias administrativas son instrumentos necesarios para la interpretación de la ley”, especialmente las reglas y reglamentos bajo su especial pericia y aquellas disposiciones legales que el legislador le encomendó aplicar. Véase, e.g., Miranda v. C.E.E., supra, 236. Claro está, una vez una agencia emite un reglamento limitando su discreción, ésta viene obligada a respetarlo y aplicarlo estrictamente hasta tanto lo revoque. Véanse, García Cabán v. U.P.R., 120 D.P.R. 167 (1987); García v. Adm. del Derecho al Trabajo, 108 D.P.R. 53 (1978).
A.R.P.E. no estaba obligado a celebrar vista evidenciaría al autorizar condicionalmente la emisión del permiso para operar el restaurante. La sección 22.01 del Reglamento de Procedimientos Adjudicativos de A.R.P. E., Reglamento Núm. 3915, dispone que:

“En el desempeño de aquellas junciones adjudicativas asignadas por las leyes o reglamentos aplicables se podrán celebrar vistas por iniciativa propia, o a petición de partes. Cuando estatuido, por tales leyes o reglamentos aplicables, la celebración de tales vistas será de carácter obligatorio. ”

En ningún lugar del citado reglamento se dispone que para adjudicar una solicitud de permiso o para resolver una solicitud de investigación de querella se requiera la celebración de una vista. Por ello, sólo podemos concluir que A.R.P.E. actuó dentro de los parámetros de su discreción al no celebrar vista, pues, aunque ciertamente podía, nada en el ordenamiento la obligaba a así hacerlo.
A.R.P.E. tampoco erró al no aplicarle a la situación fáctica de autos lo anteriormente decidido en otro caso, el de la barra-restaurante Mona’s; es decir, A.R.P.E. no estaba obligada a exigirle a Casa di Legno “no menos de *592 19 estacionamientos”. Mona's era un negocio con características particulares las cuales propiciaban el desorden, el uso intenso de bebidas alcohólicas y la delincuencia, factores que ejercían influencia sobre el grado de civilismo de los patrocinadores del establecimiento al conducir y estacionar sus vehículos de motor. Casa di Legno se describe como un restaurante italiano con expendio de bebidas alcohólicas como actividad secundaria. Irrespectivamente de que la ubicación física de los establecimientos sea la misma, estamos ante dos negocios distintos, con dueños y gerencia distintos. A.R.P.E., en el sano uso de su discreción, le impuso a Casa di Legno una serie de restricciones para que ese restaurante italiano no se degradara y se convirtiera en un “pub” de jovencitos. Por las circunstancias particulares de cada caso y por el hecho de la discreción que le asiste a la agencia, es que el ordenamiento no tiende a favorecer la aplicación de la doctrina de impedimento colateral por sentencia o resolución en situaciones como la de autos. E.C. Yokley, Zoning Law and Practice, The Michie Company, Charlottesville, 1979-1998, Vol. 4, pág. 318. Véase, además, Id., Vol. 3, pág. 204.
No obstante todo lo anterior, entendemos que A.R.P.E. sí erró al sólo requerirle dieciséis (16) estacionamientos al Ristorante Casa di Legno. El Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4, establece, en su sección 84.03-14, la ecuación matemática para determinar los espacios mínimos de estacionamiento de vehículos que un establecimiento como el de autos debe de proveer:

“Restaurantes, cafeterías, barras, fuentes de soda-No menos de un (1) espacio por cada cinco (5) metros cuadrados, o parte de éstos, de área neta de piso dedicada al servicio público y un (1) espacio por cada tres (3) empleados o parte de éstos. [...]”

Según el estimado del Municipio de San Juan, el cual no ha sido objetado por las partes, Casa di Legno cuenta con 75 metros cuadrados de área de servicio. Además, según admisión de la propia parte recurrida, el establecimiento cuenta con nueve (9) empleados. Tomando como ciertos estos hechos y aplicando correctamente la citada sección 84.03-14, el Reglamento de Zonificación requiere quince (15) estacionamientos por razón de los metros cuadrados de piso dedicado al servicio público, más tres (3) estacionamientos por razón de los nueve (9) empleados del establecimiento, para un total de dieciocho (18) espacios. Ante estos hechos, autorizar la concesión de un permiso de uso con sólo dieciséis (16) estacionamientos no se ajusta a derecho. Somos de la opinión que el lenguaje de la citada sección, formulado en términos estrictamente matemáticos, le niega discreción decisional a la agencia recurrida, por lo que no procedía expedir el permiso sin requerir al menos dieciocho (18) espacios de estacionamientos. Al interpretar una reglamentación como la citada, las palabras comunes deben interpretarse y entenderse en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces. Art. 15 del Código Civil, 31 L.P.R.A. sec. 15. Nótese que no estamos entrando en la cuestión más técnica de si los estacionamientos eran o tenían que ser “funcionales”, lo cual es un término de arte posiblemente abierto a la interpretación agencial. Lo único que hoy resolvemos es que el Reglamento de Zonificación requiere, mínimamente, la disponibilidad de dieciocho (18) estacionamientos para que Casa di Legno pueda operar legalmente.
A tenor con el razonamiento expuesto, se revoca la resolución recurrida y el permiso de uso otorgado en su virtud. Se devuelve el caso a A.R.P.E. para que aplique correctamente las disposiciones sobre estacionamientos del Reglamento de Zonificación.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*593 ESCOLIOS 2000 DTA 3
1. Surge del expediente administrativo que el Sr. Bautista le vendió el Ristorante Casa di Legno al Sr. Pierre Paul St. Hubert, mayor de edad y vecino de Carolina. En el contrato de compraventa, el cual obra en autos, se establece que “[l]a corporación [Legno Corp.] tiene pendiente una demanda (apelación), de la cual se hará cargo LA PARTE COMPRADORA", es decir el Sr. St. Hubert.
2. Para un análisis completo del ámbito de la revisión judicial de las decisiones administrativas, véase, Misión Ind. v. J.P., 146 D.P.R. _ (1998), 98 J.T.S. 79.
3. “[...] [T]he doctrine of res judicata or estoppel by judgment should be applied with great caution in zoning cases. ”
4. El Reglamento de Zonificación establece normas específicas y estrictas sobre el uso de terrenos de forma que se viabilice un desarrollo balanceado e integral que, a su vez, garantice la salud, seguridad pública y la mejor convivencia humana Asociación de Residentes de Park Side, Inc. v. Junta de Planificación de Puerto Rico, 98 J.T.S. 156.
5. Así, según Yokley, “in enforcing the provisions for off-street parking in a zoning ordinance, a city is said to be bound by its stated standards [...]. ” Ob. cit., Vol. 5, pág. 330.
6. Análogamente, Yokley asevera que “[i]n the interpretation of a zoning ordinance, words in common use must be given their plain and natural meaning in the absence of any showing that in the enactment of such ordinance words and expressions contained therein were used iri other than their usual and ordinary sense. ” Ob. cit., Vol. 4, pág. 307.