ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| RANGER AMERICAN OF PUERTO RICO, LLC<br><br>Recurrente<br><br>V.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO DE BAYAMÓN<br><br>Recurrido<br><br>INTERNATIONAL SECURITY EXPERTS, CORP.<br><br>Licitador Agraciado | KLRA202400091 | Revisión Judicial procedente de la Junta de Subastas del Municipio de Bayamón<br><br>Subasta Núm.: SP-2023-24-05-SERIE 2023-2024<br><br>Sobre: Adquisición, Instalación, Reparación, Monitoreo, y Mantenimiento de un Sistema de Alarma |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de abril de 2024.

Comparece Ranger American of Puerto Rico, LLC, en adelante Ranger o la recurrente, quien nos solicita que revisemos la Resolución Núm. 67 emitida por la Junta de Subastas del Municipio de Bayamón, en adelante la Junta de Subastas o la recurrida, en la que se adjudica la buena pro de la SP-2023-24-05 a favor de International Security Experts, Corp., en adelante ISEC o el licitador agraciado.

Por los fundamentos que expondremos a continuación, se confirma la determinación recurrida.

-I-

El pleito ante nuestra consideración tiene su génesis en la *Solicitud de Propuesta para la Adquisición, Instalación, Reparación, Monitoreo y*

*Mantenimiento de un Sistema de Alarma para las Facilidades del Municipio de Bayamón*, en adelante SP-2023-24-05.[1]

Oportunamente, la Junta de Subastas recomendó acoger la propuesta de ISEC,

> [Y]a que su propuesta principal y alterna resultaron ser la de mejor valor representando en mayor beneficio para el Municipio. Su propuesta cumplió con los requisitos, y las especificaciones mínimas solicitadas; resultó ser la más económica en comparación con las propuestas sometidas por las *Compañías Génesis Security Services, Inc.* y *Ranger American of Puerto Rico, Inc.* y esta [*sic.*] ajustada al mercado actual.[2]

Inconforme, la recurrente presentó una *Solicitud de Revisión de Decisión Administrativa* en la que alegó la comisión de los siguientes errores:

> ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE BAYAMÓN AL EMITIR UN AVISO DE ADJUDICACIÓN INOFICIOSO, QUE NO CUMPLE CON LOS REQUISITOS MÍNIMOS PARA PONER A LAS PARTES Y AL TRIBUNAL AL TANTO DE CÓMO SE TOMÓ LA DECISIÓN DE ADJUDICAR LA BUENA PRO DE LA LICITACIÓN.
>
> ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE BAYAMÓN AL CONCEDER LA BUENA PRO DEL PROCESO A LA COMPAÑÍA RECURRIDA, AÚN CUANDO DE LA TABLA DE VALORACIONES DE LAS PROPUESTAS SURGE QUE HUBO UN EMPATE CON LA PROPUESTA DE LA RECURRENTE; ADEMÁS, NO SE EVALUÓ CORRECTAMENTE LO QUE CONSTITUYE UN "MEJOR VALOR" NI SE NEGOCIÓ DIRECTAMENTE CON LOS LICITADORES.

Revisada la copia certificada del expediente administrativo y los escritos de las partes, estamos en posición de resolver.

**-II-**

**A.**

En el caso de los municipios, los procesos de subasta estaban regulados por la *Ley de Municipios Autónomos de Puerto Rico*, según enmendada.[3] Sin embargo, dicho ordenamiento fue derogado por el *Código*

---

[1] Apéndice de la recurrente, págs. 52-73.
[2] *Id.,* págs. 8-16. (Énfasis en el original).
[3] 21 LPRA secs. 4001 *et seq.*

*Municipal de Puerto Rico*, en adelante Ley Núm. 107-2020. Lo anterior, a fines de integrar, organizar y actualizar las leyes que disponen sobre la organización, administración y funcionamiento de los municipios, así como añadir nuevos modelos procesales para la consecución de mayor autonomía.

La Ley Núm. 107-2020 exige la celebración de una subasta para, entre otras, comprar materiales, equipo, comestibles, medicinas y otros suministros de igual o similar naturaleza, uso o características que excedan de cien mil (100,000) dólares.[4] Se requiere, además, que el municipio mantenga una junta de subastas.[5]

En lo aquí pertinente, el Art. 2.040 de la Ley Núm. 107-2020 dispone que la Junta de Subastas debe observar el siguiente procedimiento:

> La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo. . . [e]n la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta. Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con la sec. 7081 de este título.[6]

Finalmente, la Ley Núm. 107-2020 confiere competencia a este Tribunal de Apelaciones para revisar adjudicaciones de subastas.[7] Con el propósito de viabilizar dicha tarea, el Tribunal Supremo de Puerto Rico, en adelante TSPR, ha resuelto que, al igual que en el caso de las agencias, las decisiones de los municipios relacionadas a la adjudicación de

---

[4] Art. 2.035 (a) de la Ley Núm. 107-2020, 21 LPRA sec. 7211(a).
[5] Art. 2.038 de la Ley Núm. 107-2020, 21 LPRA sec. 7214.
[6] *Id*.
[7] Art. 1.050 (2) de la Ley Núm. 107-2020, 21 LPRA sec. 7081.

una subasta vienen obligadas a expresar los fundamentos para la actuación del municipio.[8] De modo, que "el derecho a cuestionar una subasta adjudicada mediante revisión judicial es parte del debido proceso de ley y, por la misma razón, resulta indispensable que la notificación sea adecuada a todas las partes cobijadas por tal derecho".[9]

**B.**

El procedimiento de pública subasta es de suma importancia para la contratación de servicios por parte de las agencias gubernamentales, razón por la cual "está revestido del más alto interés público y aspira a promover la sana administración gubernamental".[10] El TSPR ha expresado que, en materia de adjudicación de subastas, "la buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como un comprador con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa".[11] También, ha enfatizado que "[p]ara lograr los propósitos antedichos… el proceso de subasta gubernamental se debe caracterizar por fomentar la competencia libre y transparente entre el mayor número de licitadores

---

[8] *Pta. Arenas Concrete, Inc. v. J. Subastas*, 153 DPR 733, 741-743 (2001); *LPC & D, Inc. v. AC*, 149 DPR 869, 879 (1999).
[9] *Puerto Rico Eco Park v. Municipio de Yauco*, 202 DPR 525, 538 (2019).
[10] *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 343 (2016); *Caribbean Communications v. Pol. de PR*, 176 DPR 978, 994 (2009); *Costa Azul v. Comisión*, 170 DPR 847, 854 (2007); *Empresas Toledo v. Junta de Subastas*, 168 DPR 771 (2006).
[11] *Genesis Security Services, Inc. v. Departamento del Trabajo y Recursos Humanos; Estado Libre Asociado de Puerto Rico*, 204 DPR 986, 997 (2020), citando a *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 DPR 864, 871 (1990).

posibles y así, pues, adjudicar la subasta al mejor postor".[12]

En consideración a lo anterior, el TSPR ha declarado que,

> […][e]l fin principal es proteger los fondos públicos mediante la construcción de obras públicas o la adquisición de servicios al mejor precio posible. Al así hacerlo, se debe procurar conseguir los precios más bajos, evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia, el descuido al otorgarse los contratos y minimizar los riesgos de incumplimiento.[13]

En esencia, cuando está involucrado el uso de bienes o fondos públicos, es esencial la aplicación rigurosa de todas las normas pertinentes a la contratación y desembolso de dichos fondos, a fines de proteger los intereses y el dinero del Pueblo.[14]

Finalmente, la Sección 3.19 de la Ley de Procedimiento Administrativo Uniforme, en adelante LPAU, establece que tanto los procedimientos de subasta, como los de solicitud de propuestas, serán informales y que su reglamentación y términos serán establecidos por las agencias.[15] Consecuentemente, en Puerto Rico no existe legislación especial dirigida a regular los procesos de subasta de las agencias, por lo que estas tienen la obligación de adoptar reglamentación para guiar dichos procedimientos delimitando el alcance de su discreción. Queda pues, a la discreción de cada agencia, como entidad con el conocimiento especializado, aprobar un reglamento que

---

[12] *Aluma Cons. V. AAA*, 182 DPR 776, 783 (2011).
[13] *CD Builders v. Mun. Las Piedras, supra*, págs. 343-344.
[14] Art. VI, Sec. 9, Const. ELA, LPRA Tomo 1; *Mun. Quebradillas v. Corp. Salud Lares*, 180 DPR 1003, 1017 (2011); *CFSE v. Unión de Médicos*, 170 DPR 443, 452 (2007); *De Jesús González v. AC*, 148 DPR 255 (1999).
[15] 3 LPRA sec. 9659.

establezca el procedimiento y las guías a seguir en sus propias subastas.[16]

## C.

Ahora bien, los tribunales, en su función revisora, tienen el deber de examinar que en los procesos de subastas del gobierno no resulte adversamente afectado el erario o se menoscabe el esquema de ley que persigue asegurar la integridad de las subastas públicas.[17] A esos efectos, el TSPR ha reconocido que, de ordinario, las agencias administrativas se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración, a la luz de los parámetros establecidos por la ley y los reglamentos aplicables.[18] Por tal razón, una vez la agencia o junta involucrada emite una determinación, los tribunales no deberán intervenir con ésta salvo que se demuestre que la misma se tomó de forma arbitraria, caprichosa o mediando fraude o mala fe.[19]

Esto obedece a que, como norma general, la agencia, con su vasta experiencia y especialización, se encuentra en mejor posición que el foro judicial para determinar el mejor licitador.[20] En consecuencia, en ausencia de fraude, mala fe o abuso de discreción, ningún postor tiene derecho a quejarse cuando otra

---

[16] *Empresas Toledo v. Junta de Subastas, supra,* pág. 780. Véase, además, *LPC & D. Inc. v. AC,* 149 DPR 869 (1999).

[17] *Costa Azul v. Comisión*, 170 DPR 847, 860-861 (2007); *Cotto Guadalupe v. Departamento de Educación*, 138 DPR 658, 666 (1995).

[18] *CD Builders v. Mun. Las Piedras, supra,* pág. 348; *Autoridad de Carreteras y Transportación v. CD Builders, Inc.,* 177 DPR 398, 408 (2009).

[19] *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 898 (2007). Véase, además, *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012); *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009); *Rivera Concepción v. ARPe.*, 152 DPR 116, 122 (2000).

[20] *Empresas Toledo v. Junta de Subastas*, *supra*, pág. 779; *AEE v. Maxon*, 163 DPR 434 (2004).

proposición es elegida como la más ventajosa.[21] Tampoco ostenta un derecho adquirido en ninguna subasta.[22] Por el contrario, la adjudicación de una subasta debe decidirse a la luz del interés público[23], aunque ello represente "rechazar la oferta más baja por una más alta, siempre y cuando esta determinación no esté viciada por fraude o sea claramente irrazonable"[24].

Conviene destacar que el peso de la prueba para demostrar la ocurrencia de fraude o abuso de discreción recae en el recurrente, y si este no puede demostrar ausencia de factores racionales o razonables para la determinación de la agencia, deberá demostrar un perjuicio o una violación a los estatutos o reglamentos aplicables.[25]

Finalmente, como en el caso de cualquier decisión de una agencia administrativa, al revisar una adjudicación de subastas la facultad de los tribunales, aunque restringida, tiene como propósito delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley, estén dentro del marco del poder delegado y se basen en el expediente administrativo.[26]

**-III-**

La recurrente alega "que el aviso de adjudicación adolece de unas serias deficiencias que lo hace inoficioso". Así pues, el mismo no indica "qué factores fueron tomados en consideración, ni el peso o

---

[21] *Torres Prods. v. Junta Mun. Aguadilla, supra,* pág. 898; *Great Am. Indem Co. v. Gobierno de la Capital*, 59 DPR 911, 916 (1942).
[22] *Torres Prods. v. Junta Mun. Aguadilla*, *supra*, pág. 898.
[23] *Id.*
[24] *Empresas Toledo v. Junta de Subastas*, *supra*, pág. 783.
[25] *Id.*
[26] *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 115 (2023); *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839-840 (2021); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020).

influencia que tuvieron en la toma de decisión del Comité Evaluador cada uno de ellos…". En fin, el aviso de adjudicación "no explica por qué se escogió a ISEC".

Así mismo, la recurrente indica que el Aviso de Adjudicación, firmado y enviado por el Presidente de la Junta de Subastas, es nulo porque no representa la intención del Comité Evaluador. Esto es así, según Ranger, porque, aunque esta y el licitador agraciado obtuvieron la misma puntuación en el análisis de criterio, por error en la suma de las puntuaciones individuales, al licitador agraciado se le concedió una puntuación total mayor, lo que permitió que se le acreditara la buena pro, específicamente, "por un solo punto".

La recurrente sostiene, además, que erró la recurrida al no proveer en los pliegos de subasta "un listado de equipo particular a cotizar ni las cantidades…". A su entender, ello hubiese generado una evaluación económica más equitativa, basado "en los valores actuales del mercado".

Por otro lado, señala, finalmente, que contrario al Artículo V del Reglamento de Subastas, Solicitudes de Propuestas, Solicitudes de Cualificaciones y Registro de Licitadores del Municipio Autónomo de Bayamón, el Comité Evaluador no negoció las propuestas con los licitadores.

Por su parte, la recurrida arguye que la Resolución Núm. 67 y la carta de notificación contienen todas las advertencias exigidas por la ley y la jurisprudencia aplicable. En su opinión, tampoco

procede la alegación de la insuficiencia de información de los pliegos de la solicitud de propuesta. Esto responde a que, contrario a la contención de la recurrente, del examen del pliego de especificaciones, la reunión pre-subasta y las visitas compulsorias, se desprende que la Junta de Subastas proporcionó a los interesados suficiente información sobre el equipo requerido y los lugares en los que había que instalarlos.

Por otro lado, para la recurrida, tampoco hubo un empate entre ISEC y Ranger. Cualquier impresión en sentido contrario obedeció a un error involuntario consistente en haber invertido las puntuaciones de Génesis y la recurrente en la propuesta económica. En todo caso, no hay controversia de que la propuesta más económica fue la de la licitadora agraciada.

La parte recurrida señala, finalmente, que no se sostiene la alegación de que el Municipio de Bayamón incumplió con su obligación de negociar con Ranger. A su entender, conforme a la normativa aplicable, la recurrida no tenía obligación de negociar. En todo caso, el proceso de negociación con los licitadores es discrecional, no mandatorio. Sin embargo, en este caso, la Junta de Subastas negoció con los licitadores y particularmente con la recurrente. Así lo demuestra la copia certificada del expediente administrativo.

"Nuestra función es tomar el récord en su totalidad y poner en vigor la orden, si encontramos evidencia sustancial para sostener las conclusiones de la Junta".[27]

---

[27] *JTR v. Escuela Coop E. M. de Hostos*, 107 DPR 151, 157 (1978) (citando a *JRT v. Línea Suprema, Inc.*, 89 DPR 840, 849 (1964)).

Conforme con dicho mandato, luego de revisar, independientemente, la totalidad del expediente administrativo, concluimos que la adjudicación de la Solicitud de Propuesta es razonable y no necesita nuestra intervención. La recurrente no nos ha puesto en posición de retirar la deferencia que amerita la determinación impugnada.

Establecido lo anterior, corresponde ahora atender los errores imputados a la Junta de Subastas. Veamos.

En primer lugar, surge de una lectura integrada del expediente administrativo que la notificación de la adjudicación es adecuada. Contiene el nombre de los licitadores[28], síntesis de las propuestas[29] y los criterios de adjudicación[30]. Además, informa sobre el derecho de las partes a solicitar revisión judicial y el término para ello.[31] Como si lo anterior fuera poco, del examen en conjunto de la copia certificada del expediente administrativo surge la razón por la cual se escogió a ISEC como licitadora agraciada, a saber, que es la licitadora más económica que cumple con los requisitos de la Solicitud de Propuesta.[32]

En segundo lugar, la intención del Comité Evaluador es inequívoca. Adjudicar la Solicitud de Propuesta al licitador agraciado, ISEC, que es el licitador con el precio más bajo que cumple con todos los requerimientos del mecanismo de compra de bienes elegido por la recurrida.

---

[28] Copia certificada del expediente administrativo, pág. 7.
[29] *Id.*, pág. 22.
[30] *Id.*, págs. 30-35.
[31] *Id.*, pág. 8.
[32] *Id.*, págs. 23 y 29-31.

Esa posición encuentra apoyo en el análisis integrado de la copia certificada del expediente administrativo, que revela consistentemente la superioridad del licitador agraciado en todas las categorías con relación a sus competidores, específicamente, respecto de Ranger, que, por el contrario, presentó la oferta económica más alta.

En tercer lugar, el tercer señalamiento de error es resultado de una lectura rígida de algunos documentos que obran en el expediente administrativo. Por el contrario, si los leemos atenta e integradamente, concluimos que el trámite de esta compra incluyó una reunión pre-subasta y dos visitas en las que las partes tuvieron la oportunidad de precisar las características del equipo requerido.

En cuarto lugar, el error relacionado con el incumplimiento de la recurrida con su "obligación de negociar con los licitadores" no merece mayor atención. Como argumentó correctamente la Junta de Subastas, dicho ente no tiene una obligación de negociar. Por el contrario, ello recae en su ámbito de discreción. Además, en el caso ante nuestra consideración sí obra prueba en el expediente de que la recurrida negoció con Ranger.[33]

Finalmente, la notificación de la adjudicación de la Solicitud de Propuesta ante nos, no es defectuosa. Por el contrario, cumple cabalmente con los requisitos de nuestro ordenamiento jurídico administrativo. Esto es así, al extremo, de que Ranger no solo compareció oportunamente ante este tribunal intermedio, sino que

---

[33] *Id.*, pág. 36.

además, se ha defendido vigorosamente en el trámite de epígrafe.[34]

**-IV-**

Por los fundamentos antes expuestos, se confirma la determinación recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Bonilla Ortiz disiente por escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[34] *PR Eco Park et al. v. Mun. de Yauco*, *supra*, pág. 540; *Bomberos Unidos v. Cuerpo Bomberos et al.*, 180 DPR 723, 762 (2011); *Molini Gronau v. Corp. PR Dif. Púb.*, 179 DPR 674, 687 (2010); *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 39 (2000).

| RANGER AMERICAN OF PUERTO RICO, LLC<br><br>Recurrente<br><br>V.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO DE BAYAMÓN<br><br>Recurrido<br><br>INTERNATIONAL SECURITY EXPERTS, CORP.<br><br>Licitador Agraciado | KLRA202400091 | Revisión Judicial procedente de la Junta de Subastas del Municipio de Bayamón<br><br>Subasta Núm.: SP-2023-24-05-SERIE 2023-2024<br><br>Sobre: Adquisición, Instalación, Reparación, Monitoreo, y Mantenimiento de un Sistema de Alarma |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**VOTO DISIDENTE JUEZ BONILLA ORTIZ**

En San Juan, Puerto Rico, a ___ de marzo de 2024.

**I.**

Me veo obligado a disentir de la mayoría de este Panel que ha decidido confirmar la *Resolución Núm. 67 Serie: 2023-2024*, por entender que no tenemos jurisdicción para atender este recurso de *Revisión Administrativa*.

**II.**

En todo caso de impugnación de la adjudicación de una subasta o una solicitud de propuesta la notificación del ganador de la buena pro del mismo es la que le da jurisdicción a este Foro para revisar la misma. La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.* (LPAU), y su jurisprudencia interpretativa disponen

que principios básicos del debido proceso de ley requieren que la notificación del resultado de la subasta o solicitud de propuesta debe ser una suficiente en derecho. Esto es, además de informar el procedimiento a seguir para solicitar la revisión judicial de la misma, la notificación debe incluir ciertos criterios mínimos que informen a los participantes la forma en que se adjudicó la misma, de forma que se puedan identificar los elementos para solicitar la revisión judicial. La notificación debe ser suficiente y clara en explicar los criterios evaluados.

Es menester que, una notificación de adjudicación de subasta se haga de forma adecuada a todas las partes que tengan derecho a impugnar tal determinación. *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 36 (2000). Una notificación adecuada de una subasta significa que esté debidamente fundamentada. *L.P.C. & D., Inc. v. A.C.*, 149 DPR 869, 877-878 (1999).

En particular, la notificación de adjudicación de una subasta municipal debe incluir al menos: "(1) los nombres de los licitadores que participaron en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos y (4) la disponibilidad y el plazo para solicitar la reconsideración y revisión judicial." *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 895 (2007). Estos fundamentos deben incluirse, aunque sea de forma

breve, sucinta o sumaria, con el fin de que el foro apelativo pueda cumplir con su función revisora cabalmente. *Íd.*

Asimismo, el Tribunal Supremo ha indicado que aun en procedimientos informales como lo es la adjudicación de subasta "se exige que la agencia exponga una explicación de las bases sobre las que descansa su decisión, de forma tal que el tribunal tenga fundamentos para hacer su determinación." *L.P.C. & D., Inc., v. A.C.,* supra, página 878. Si bien no se exige la consignación de determinaciones de hechos y conclusiones de derecho, toda vez que es un procedimiento adjudicativo informal, en la notificación tienen que quedar demostradas las razones que motivaron la decisión para que las partes y el tribunal las conozcan. *Íd.* Sólo así queda asegurada la posibilidad de que los tribunales puedan revisar los fundamentos de la decisión para determinar si fue arbitraria, irrazonable o caprichosa. Lo anterior resulta aún más apremiante en la adjudicación de subastas porque está en juego el desembolso de fondos públicos. *Pta. Arenas Concrete, Inc. v. J. Subastas,* 153 DPR 733, 742 (2001).

### III.

En el caso ante nos la notificación es ambigua, por ello, no es una notificación adecuada o suficiente en derecho. La tabla de *Análisis de Criterios* SP-2023-2024-05 que explica los criterios evaluados es confusa o equivocada.[35] Dicha tabla indica que la suma de los criterios evaluados es de 124 para International Security Experts y de 123 para Ranger

---

[35] Véase, *Análisis de Criterios*, pág. 3 del apéndice del recurso.

American.   Realmente cuando se suman los valores de los criterios evaluados, el total resulta de 124 para ambos proponentes.  La confusión creada por esta tabla de análisis de criterios se complica cuando se compara la misma tabla con su equivalente en la *Resolución Núm. 67*, que adjudicó el proceso de solicitud de propuesta aquí impugnado.[36]  En la tabla de análisis de criterios incluida en la *Resolución* el valor total de las respectivas partes es 124 y 123.  Sin embargo, el valor otorgado en la línea de "Propuesta Económica" es diferente al indicado en la tabla antes descrita, incluida como parte de la notificación.   Esta discrepancia hace que la notificación sea confusa, y, por lo tanto, insuficiente en derecho.

Como es sabido, la suficiencia de la notificación debe surgir de forma clara del propio documento de notificación y sus anejos.  La falta de suficiencia de la notificación no se subsana con analizar el récord administrativo ante el Municipio.  Ese ejercicio derrotaría el principio rector del debido proceso de ley que toda notificación debe de cumplir.

La falta de notificación adecuada del proceso de solicitud de propuesta aquí impugnado hace que dicha notificación sea nula y nos impida ejercer nuestra jurisdicción.  Por ello, no podemos ejercer nuestra jurisdicción hasta que el Municipio no emita una notificación adecuada en derecho.


Hon. Fernando J. Bonilla Ortiz
Juez de Apelaciones

---

[36] Véase, *Resolución Núm. 67*, pág. 10 del apéndice del recurso.